. HODGES *v.* SHULER *et al.*

An instrument, by which a railroad corporation promises to pay in Boston to W. S., or order, " $1,000, with interest semi-annually, as per interest warrants hereto attached, as the same shall become due ; or upon the surrender of this note together with the interest warrants not due, to the treasurer at any time until six months of its maturity," to issue stock in exchange therefor, is a negotiable promissory note.

A notice of non-payment held sufficient to charge the indorser of such note, which correctly described it in all particulars, except that it is said to have been made by " S. H., treasurer," whose signature, with that of the president, was affixed to the note.

The note was designated on its margin as No. 253, and it appeared that five notes had been issued at the same time and to the same payee which were in all respects alike, and distinguishable only by the numbers marked on the margin : *Held,* that the omission to state the number, in the notice of non-payment, did not render it defective.

It is the misfortune of the indorser, if, from his having indorsed several notes, a complete description of one of them, in every essential feature, does not enable him to identify it.

APPEAL from the Supreme Court. The action was against the defendants as indorsers of the following instrument or note :

"RUTLAND AND BURLINGTON RAILROAD COMPANY.

"No. 253. $1,000.

"Boston, *April* 1, 1850.

"In four years from date, for value received, the Rutland and Burlington Railroad Company promises to pay in Boston, to Messrs. W. S. and D. W. Shuler, or order, $1,000, with interest thereon, payable semi-annually, as per interest warrants hereto attached, as the same shall become due; or upon the surrender of this note, together with the interest warrants not due to the treasurer, at any time until six months of its maturity, he shall issue to the holder thereof ten shares in the capital stock in said company in exchange therefor, in which case interest shall be paid to the date to which a dividend of profits shall have been previously declared, the holder not being entitled to both interest and accruing profits during the same period.

"T. FOLLETT, President. SAM. HENSHAW, Treasurer."

At the time the suit was brought there was an unpaid interest warrant attached, and which was attached at the time of indorsement.

The answer of the defendants put in issue none of the allegations in the complaint except those in respect to presentment, notice and protest.

It was admitted on the trial that on the 4th of April, 1854, a notary public in Boston, at the request of the Bank of Commerce of that city (to which bank the plaintiff had sent for collection the note mentioned in the complaint in this action), did present the note at the office, in Boston, of the treasurer of the Rutland and Burlington Railroad Company, the place of business in Boston of said company, and there demanded payment of the same of the treasurer, which was refused; and thereupon notified the defendants thereof by depositing, on the same day, in the post office in Boston, a written notice, of which the following is a copy:

"CITY OF BOSTON, *April* 4, 1854.
To Messrs. W. S. and D. W. SHULER:

"Please take notice that a promissory note made by S. Henshaw, treasurer, for $1,000, dated April 1st, 1850, payable in four years, in favor of yourselves, and indorsed by you, has been presented by me to the office of the treasurer, and payment being duly demanded was refused, whereupon, by direction of the holder, the same has been protested, and payment thereof is requested of you.

"ADOLPHUS BATES, Notary Public."

This notice was inclosed, and directed to the defendants at Amsterdam, N. Y., their place of residence, and the post office at which they received their letters; and the notice was received by them in due course of mail, and the post mark thereon was "Boston, April 5."

It was further admitted that for some time immediately preceding the date of the note, the defendants were engaged as contractors in building the road of the said railroad company, and on or about the date of said note received from the company, in satisfaction of their contract and work, the said note together with four other notes, each of the same date and amount, and in every respect corresponding with said note, except that the numbers of all the said notes marked thereon, were different each from the other; that the transfer by said defendants of the note mentioned in said complaint was in the city of Boston, and State of Massachusetts, and that each of said notes was transferred by said defendants shortly after the date of the said notes, in the same manner as the note set forth in the complaint; and that Sam. Henshaw (whose name is signed as treasurer to the note mentioned in said complaint) never signed as treasurer or otherwise, any note in which the said defendants were named as payees, except the notes above mentioned.

The court decided that the plaintiff was entitled to recover against the defendants, and gave judgment accordingly. The defendants excepted to the decision, as follows:

Hodges *v.* Shuler.

1st. The court erred in deciding that the defendants were liable upon the instrument set forth in the complaint by their indorsement.

2d. The court erred in deciding that the notice of demand and refusal to pay, served upon the defendants, was sufficient to charge the defendants as indorsers.

3d. The court erred in deciding that the plaintiff was enti‑ tled to recover in the action.

The Supreme Court affirmed the judgment, and the defend‑ ants appealed to this court.

*John K. Porter*, for the appellant.

*John B. Gale*, for the respondent.

WRIGHT, J.    The single question is, whether the defend‑ ants can be held as indorsers.   It is insisted that they can‑ not, for the reasons, 1st. That the instrument set out in the complaint, is neither in terms nor legal effect a negotiable prom‑ issory note, but a mere agreement; the indorsement in blank of the defendants, operating, if at all, only as a mere transfer, and not as an engagement to fulfill the contract of the railroad company in case of its default; and 2d. That if it be a note, the notice of its dishonor was insufficient to charge the defend‑ ants as indorsers.

Whether the blank indorsement of the defendants imports any binding contract, depends on the law of Massachusetts; in which State it is to be assumed, from the facts in the case, that the original instrument and indorsement were made.   But the law of Massachusetts does not differ from that of this State or of England in any particular material to the present inquiry.   In Massachusetts there has been apparently a relax‑ ation of the common law rule so far as to extend the remedy against indorsers to notes payable absolutely in a medium other than cash; but in all other respects the legal rules appli‑ cable to negotiable paper, are the same in that State as in our own.

The instrument on which the action was brought has all the essential qualities of a negotiable promissory note. It is for the unconditional payment of a certain sum of money, at a specified time, to the payee's order. It is not an agreement in the alternative, to pay in money or railroad stock. It was not optional with the makers to pay in money or stock, and thus fulfill their promise in either of two specified ways; in such case, the promise would have been in the alternative. The possibility seems to have been contemplated that the owner of the note might, before its maturity, surrender it in exchange for stock, thus canceling it and its money promise; but that promise was nevertheless absolute and unconditional, and was as lasting as the note itself. In no event could the holder require money and stock. It was only upon a surrender of the note that he was to receive stock; and the money payment did not mature until six months after the holder's right to exchange the note for stock had expired. We are of the opinion that the instrument wants none of the essential requisites of a negotiable promissory note. It was an absolute and unconditional engagement to pay money on a day fixed: and although an election was given to the promisees, upon a surrender of the instrument six months before its maturity, to exchange it for stock, this did not alter its character, or make the promise in the alternative, in the sense in which that word is used respecting promises to pay. The engagement of the railroad company was to pay the sum of $1,000 in four years from date, and its promise could only be fulfilled by the payment of the money, at the day named.

We are next to inquire whether the notice was sufficient. A notice, that in terms, or by necessary implication or reasonable intendment, informs the indorser that the note has become due, and has been presented to the maker, and payment refused, is sufficient. The party to whom the notice is addressed should not be misled by an indefinite or uncertain description of the note and, from the imperfection of the notice itself, be unable to determine to what particular note it refers. A notice which omits an essential feature of the note, or mis-

describes it, is an imperfect one, but is not necessarily invalid. It is invalid only when it fails to give that information which it would have given but for its particular imperfection; and even in case the notice in itself be defective, if, from evidence *aliunde* of the attendant circumstances, it is apparent that the indorser was not deceived or misled as to the identity of the dishonored note, he will be charged. A note is well described when its maker, payee, date, amount, and time and place of payment, are stated; and when a notice sets forth these particulars, with reasonable accuracy, together with the facts of presentment and dishonor, it cannot be rendered invalid by showing *aliunde* that notes similar as to parties, date, amount, and time, and place of payment were outstanding, and were only distinguishable from each other by their numbering.

This notice, which was dated at Boston, informed the indorsers that a promissory note made by S. Henshaw, treasurer, for $1,000, dated April 1st, 1850, payable in four years, in favor of themselves, and indorsed by them, had been presented on the 4th of April, 1854, at the office of the treasurer, and payment being duly demanded, was refused. The notice contained no allusion to the number of the note, and described it as made by "S. Henshaw, treasurer." The date, amount, payees, indorsees and time, and, inferentially, the place of payment, were accurately described. But it is urged that there was a failure to charge the defendants as indorsers, for the reason that there was a misdescription as to the maker, and the notice contained no reference to the number by which the note was designated and distinguished from four others of a similar description, given and transferred by the defendants simultaneously. I think both of the reasons are without force, and that the notice, construed in the light of its attending and surrounding circumstances, was sufficient. At least, from the contents of the notice itself, and the extrinsic facts admitted in the case, it was a question not of law, but of fact, whether knowledge was actually brought home to the indorsers of the dishonor of the note in suit; and that question of fact has been found against the defendants in the court

below. Examine, for a moment, the objections to the notice, separately. It describes the note to have been made by "S. Henshaw, treasurer." This was a misdescription, as it was, in fact, made by the railroad company, Henshaw acting as its agent, and signing the instrument in his capacity as treasurer. But did this misdescription deceive or mislead the defendants as to the identity of the dishonored paper? It is very apparent that it did not. Henshaw never signed, as treasurer or otherwise, any note in which the defendants were named as payees, except the five notes given to the defendants on the 1st April, 1850, for $1,000 each, payable in four years from date, for labor performed as contractors in constructing the road of the company. It is admitted that these five notes were given in satisfaction of their contract with the railroad company. They knew its financial officer, the treasurer, and that the five notes dated April 1st, 1850, became due and payable in Boston on the 4th April, 1854; and they are to be presumed not to have indorsed any like notes of the company, or have had any indorsement outstanding on any note, except the five, which resembled them in any one important feature. Upon the receipt, therefore, by due course of mail, of the notice dated and mailed at Boston on the 4th April, 1854, and describing the note accurately as to date, amount, payees, and time and place of payment, and giving the name of one of its signers, whom the defendants knew was the treasurer of the railroad company, they were fully informed that such notice referred to one of the five notes. At all events, it was a question of fact, whether the information had been actually given to them, and whether they were reasonably apprised of the particular paper upon which they were sought to be charged.

Secondly, as to the objection founded on an omission in the notice to designate the number of the note sued on. It seems that the note was designated in its margin as No. 253, and the notice omitted to describe it by the number. But this did not render the notice *per se* fatally defective. The number was not a part of the note, and there was a complete description of it without the number. It cannot be, that when a

*Hodges v. Shuler.*

notice actually describes every essential feature of a dishonored note, such notice may be invalidated, by an indorser showing, *aliunde*, that there were similar notes indorsed by him simultaneously, and distinguishable only by their different numbers. All that the holder of a note is bound to do is, to give the indorser a complete description of it, and if from such description it cannot be identified, it is the fault or misfortune of the indorser in having indorsed several notes alike in every essential feature. Showing, in this case, that there were four other notes given to the defendants by the railroad company, on the 1st April, 1850, and shortly afterwards transferred by them by indorsement, like the one in suit except that they were differently numbered, did not, as matter of law, stamp the notice as a defective and insufficient one. Indeed, these extrinsic facts were quite immaterial, without showing further that the four notes were transferred to persons other than the holder of the note in suit, and that they were outstanding in April, 1854. The latter facts were not to be presumed, with the view of invalidating the notice, or imposing the onus upon the plaintiff to identify, by extraneous evidence, the note in suit to the defendants as the one referred to in the notice as dishonored.

I am of the opinion that the action was well brought against the defendants as indorsers of a negotiable promissory note, and that the notice of its dishonor was sufficient.

The judgment of the Supreme Court should be affirmed.

All the judges agreed that the instrument in suit was a promissory note; DENIO and WELLES, Js., dissented on the ground that the notice of non-payment was insufficient in omitting the number upon the margin of the note.

Judgment affirmed.