THE PRESIDENT AND DIRECTORS OF THE MANHATTAN COMPANY, Appellant, *v.* J. PIERPONT MORGAN et al., Copartners under the Firm Name of J. P. MORGAN & Co., et al., Respondents.

Negotiable instruments — banks and banking — certificates of bankers stating that bearer is entitled to receive government bonds " when, as and if delivered " and to be paid interest when money is supplied for that purpose, are not negotiable — certificates not temporary or provisional bonds of government but personal obligation of bankers — law merchant not applicable — negotiability by contract or estoppel not found — evidence insufficient to prove custom to deal with certificates as negotiable.

1. Temporary certificates issued and signed by defendants, bankers in the city of New York, whereby the bearer was stated to be entitled to receive bonds of the Kingdom of Belgium, " when, as and if delivered " by the Belgian government to defendants, to which certificates were affixed warrants for interest, payable to bearer, subject, however, to the condition that moneys for such payment were supplied by the government of Belgium, are not negotiable instruments. They are not the temporary or provisional bonds of the government of Belgium but are the obligations of defendants personally, the executory contracts of bankers, who have underwritten an issue of securities, binding them to make delivery and payment

when they get the documents and the money. (*Goodwin* v. *Robarts,* L. R. 10 Ex. 76, 337; 1 App. Cas. 476, distinguished.)

2. In an action by one who took stolen certificates for value and in good faith, to recover from defendants the value of the bonds, demanded and refused, plaintiffs' case is not helped by section 7 of the Negotiable Instruments Law (Cons. Laws, ch. 38) to the effect that "in any case not provided for in this chapter the rules of the law merchant shall govern." By section 20 of the Negotiable Instruments Law, an instrument to be negotiable must, among other requirements, "contain an unconditional promise or order to pay a sum certain in money" and "must be payable on demand, or at a fixed or determinable future time." By section 23, "an instrument payable upon a contingency is not negotiable and the happening of the event does not cure the defect," and by section 24 there is a like declaration as to the non-negotiable character of any "instrument which contains an order or promise to do any act in addition to the payment of money." Tested by these requirements the certificates are not negotiable and the law merchant cannot prevail against prohibitions so specific.

3. Assuming that new forms of negotiability may be created by contract or by estoppel, such a contract cannot be found in a provision, without more, that a certificate, non-negotiable in form, shall be payable to bearer. Nor can it be found in the provision that the bankers "may treat the bearer * * * as the absolute owner * * * for all purposes," and "shall not be affected by any notice to the contrary." The object of that provision was obviously the protection of the bankers rather than the change or enlargement of the title of the holder. Nor is there any element of estoppel. The owner of these certificates did not intrust them to the possession of the thief. He did not even negligently leave them where they would be likely to be stolen. He kept them in a safe from which they were abstracted by a burglar.

4. A custom to deal with the certificates as negotiable is not proved by the evidence.

*Manhattan Co.* v. *Morgan,* 213 App. Div. 201, affirmed.

(Argued December 15, 1925; decided January 12, 1926.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered June 19, 1925, affirming a judgment in favor of defendants entered upon a dismissal of the complaint by the court on trial at Special Term.

*George W. Wickersham, Paul Van Anda* and *John J. Kirby* for appellant. The interim certificates were not merely agreements of the bankers but were the obligations of the Belgian government for which they were issued by the bankers as agents. (*Goodwin* v. *Robarts*, L. R. 10 Ex. 76; 1 App. Cas. 476.) The interim certificates issued for the Belgian government by the bankers conform substantially to the requirements of section 20 of the Negotiable Instruments Law by virtue of being, both on their face and by the usage of the financial world, the temporary equivalents of the bonds which conformed literally thereto. (*Gorgier* v. *Mieville*, 3 B. & C. 45; *Union Trust Co.* v. *Oliver*, 214 N. Y. 517; *Delafield* v. *Illinois*, 2 Hill, 159; 26 Wend. 192; *Mercer County* v. *Hacket*, 1 Wall. 83; *Hibbs* v. *Brown*, 190 N. Y. 167; *Higgins* v. *Hocking Valley R. R. Co.*, 188 App. Div. 684; *Chemical National Bank* v. *Kellogg*, 183 N. Y. 92; *Manhattan Savings Institution* v. *N. Y. National Exchange Bank*, 170 N. Y. 58; *Seybel* v. *Nat. Currency Bank*, 54 N. Y. 288; *Welch* v. *Sage*, 47 N. Y. 143; *Murray* v. *Lardner*, 2 Wall. 110.) The interim certificates are negotiable by virtue of sections 7 and 29 of the Negotiable Instruments Law. (*Goodwin* v. *Robarts*, L. R. 10 Ex. 337, 346; *Gorgier* v. *Mieville*, 3 B. & C. 45; *Commercial Nat. Bank* v. *Zimmerman*, 185 N. Y. 210; *Chemical Nat. Bank* v. *Kellogg*, 183 N. Y. 92; Brannan on Neg. Inst. Law [3d ed.], 475; *Brown* v. *Perera*, 176 N. Y. Supp. 215; *Strickland* v. *National Salt Co.*, 79 N. J. Eq. 182.) The interim certificates are negotiable by custom and usage, independently of statute. (*Lickbarrow* v. *Mason*, 6 East, 21; *N. Y. & N. H. R. R. Co.* v. *Schuyler*, 34 N. Y. 30; *Hibbs* v. *Brown*, 190 N. Y. 167; *Zander* v. *American S. & T. Co.*, 178 N. Y. 208; *American Ex. Nat. Bank* v. *Woodlawn Cemetery*, 194 N. Y. 116; *Reynolds* v. *Title G. & T. Co.*, 240 N. Y. 257; *Kenicott* v. *Supervisors*, 16 Wall. 452; *Belden* v. *Burke*, 147 N. Y. 542; 4 Cook on Corp. [8th ed.] 3495; *Rockmuhl* v. *Pittsburgh*, Fed. Cas. No. 11,982.)

*Otto C. Sommerich* and *Maxwell C. Katz* for respondents. The Negotiable Instruments Law defining what is a negotiable instrument, and these interim certificates calling for delivery of definitive bonds when, as and if delivered and not unconditionally for money, and, therefore, not complying with the definition of the Negotiable Instruments Law, and having been stolen prior to plaintiff's acquisition thereof, plaintiff acquired no title. (*Commercial National Bank* v. *Zimmerman,* 185 N. Y. 210; *Borough of Montvale* v. *People's Bank,* 74 N. J. L. 464; *King Cattle Co.* v. *Joseph,* 199 N. W. Rep. 437; *International Finance Co.* v. *Northwestern Drug Co.,* 282 Fed. Rep. 920; *Cellers* v. *Meachem,* 49 Ore. 186; Ogden's Neg. Inst. 253; *First State Bank* v. *Williams,* 164 Ky. 143; *Union Trust Co.* v. *McGinty,* 212 Mass. 205; *Hibbs* v. *Brown,* 190 N. Y. 167.) Custom and usage cannot render instruments negotiable not complying with the statute. (*Montvale* v. *People's Bank,* 74 N. J. L. 464; *King Cattle Co.* v. *Joseph,* 199 N. W. Rep. 437; *International Finance Co.* v. *Northwestern Drug Co.,* 282 Fed. Rep. 920; *Kohn* v. *Sacramento Electric, Gas & Ry. Co.,* 168 Cal. 1; *Dunham* v. *Dey,* 13 Johns. 40; *Dunham* v. *Gould,* 16 Johns. 367; *Markham* v. *Jaudon,* 41 N. Y. 235; *Content* v. *Banner,* 184 N. Y. 121; *Eccles Co.* v. *Munn,* 210 S. W. Rep. 626.) The mere fact that the certificates in suit are bearer certificates does not render these certificates negotiable. (*Chicago, etc.,* v. *Howard,* 7 Wall. 392; *Dixon* v. *Bovill,* 3 Macq. 1; *American Nat. Bank* v. *Somerville,* 191 Cal. 364.)

CARDOZO, J.  Bankers in the city of New York issued temporary certificates whereby the bearer was stated to be entitled to bonds of the Kingdom of Belgium when delivered in definitive form. Three of these certificates, each of the par value of $1,000, were stolen from the owner. By the thief or by some one who got them from the thief, they were delivered to the plaintiff, a bank in the city of

New York, which took them for value and in good faith. The bank upon proper tender made demand of the bankers that the certificates be exchanged for bonds. The bankers refused to make the exchange because of notice of the theft. In this action the bank seeks judgment against the bankers for the value of the bonds demanded and refused. The question is whether the certificates are negotiable instruments.

The " obligor," the Kingdom of Belgium, and the " bankers," J. P. Morgan & Company and Guaranty Trust Company of New York, defined in a written contract their respective rights and duties. The obligor was to issue its bonds in the aggregate principal amount of $50,000,000, dated June 1, 1920, and payable June 1, 1945. Until bonds in definitive form were engraved and ready for delivery, two temporary or provisional bonds for the aggregate amount of $50,000,000 were to be delivered to the bankers. The bankers were to endeavor to form a syndicate which would offer the bonds on stated terms for public subscription. If the syndicate was formed and the two temporary or provisional bonds were received, the bankers agreed to credit to the account of the obligor on June 7, 1920, the net proceeds of $11,000,000, and on June 18, 1920, the net proceeds of $39,000,000, the residue of the issue. This meant that the bankers were underwriting the entire amount. Pending the delivery of the definitive bonds, the bankers were to be at liberty to " deliver to subscribers for such bonds a receipt or other writing in the names of both or either of them, evidencing° the right of the holder to receive an amount of such bonds specified in such receipt or writing." Other provisions are unimportant for the controversy before us.

The certificates prepared by the bankers and issued to subscribers were in the following form:

" This is to certify, that the bearer is entitled to receive a Bond for One Thousand Dollars principal amount, of

the Kingdom of Belgium Twenty-five Year External Gold Loan 7-1/2% Sinking Fund Redeemable Bonds (more fully described in the circular issued under date of June 1, 1920), with coupons due December 1, 1920, and subsequently, attached, when as and if delivered to us in definitive form by the Obligor, and upon surrender of and in exchange for this certificate and the annexed interest warrant, subject, however, to the provisions following:

" If the Bond deliverable hereunder be not delivered prior to December 1, 1920, the interest thereon due on that date, will be paid upon presentation and surrender of the annexed warrant, provided moneys for the payment of interest on the Bonds of the issue shall have been received by the undersigned from the Obligor. If the interest due December 1, 1920, be so paid by the undersigned, the Bond will be deliverable without the coupon maturing on that date, and this certificate will be received without the interest warrant.

" Every taker and holder of this certificate and the attached warrant hereby agrees that the undersigned may treat the bearer of this certificate and the attached warrant as the absolute owner hereof and thereof, as the case may be, for all purposes, and that the undersigned shall not be affected by any notice to the contrary.

" In Witness Whereof, the undersigned have caused this certificate to be subscribed and the annexed interest warrant to be hereunto attached bearing the facsimile signature of J. P. Morgan & Co.

" Dated, June 18, 1920.     J. P. MORGAN & CO.
" GUARANTY TRUST COMPANY OF NEW YORK,
" By J. P. MORGAN &. Co."

There was also annexed to each certificate an interest warrant as follows:

" Warrant for interest due December 1, 1920, upon $1,000 principal amount of Bonds of above issue, specified in the certificate No. M 19349 issued by the undersigned

under date of June 18, 1920, payable to bearer at the offices of the undersigned, but only after the receipt by the undersigned from the Kingdom of Belgium of moneys for the payment of such interest and also only in case the said Certificate be not surrendered before December 1, 1920. The holder of this warrant is bound by the provisions in respect thereof contained in said certificate.

" J. P. MORGAN & CO.
" GUARANTY TRUST COMPANY OF NEW YORK,
"By J. P. MORGAN & Co."

Testimony is in the record that interim certificates for government and corporate bonds pass freely from hand to hand without other evidence of title than the possession of the instruments. Testimony is also in the record that the particular form of certificate adopted by the bankers did not come into general use till 1920, the year of the transaction out of which this controversy arises. The trial judge refused to find the existence of a general custom whereby instruments of like tenor are treated as negotiable.

The holding was, upon these facts, that title to the certificates stolen from the owner was not divested by the later purchase for value without notice. Upon appeal to the Appellate Division, the judgment was affirmed.

The plaintiff attempts to bring the case within the well-known case of *Goodwin* v. *Robarts* (L. R. 10 Ex. 76; L. R. 10 Ex. 337; 1 App. Cas. 476). The facts are widely different. There the Russian government, intending to issue bonds or government stock, delivered to subscribers instruments described as " scrip " which were signed by bankers, the house of Rothschild, with the descriptive word " agents." The scrip was merely a temporary bond, abbreviated and indeed fragmentary in form, but evidencing, none the less, the obligation of the government, authenticated by its agents, and exchangeable for formal bonds thereafter. There was an unequivocal

engagement that in the meantime interest would be paid at designated dates. " This scrip is as much a Russian instrument as the bond itself would be " (BRAMWELL, B., L. R., 10 Ex. at p. 83). " It is plain on the face of the document that the Messrs. de Rothschild only profess to be acting as the agents of the foreign governments " (COCKBURN, C. J., p. 344). Doubt, if there was any, as to the meaning of the abbreviated promise was removed by evidence of the custom of the market. " The usage of the money market has solved the question whether scrip should be considered security for, and the representative of, money, by treating it as such " (COCKBURN, C. J., p. 353).

We do not need to determine whether everything that was said in the many opinions rendered while that case was in the courts, would be accepted as law here. Even under our statute, however, " the instrument need not follow the language of this chapter, but any terms are sufficient which clearly indicate an intention to conform to the requirements thereof " (Negotiable Instruments Law, § 29 [Cons. Laws, ch. 38]; *Nelson* v. *Citizens' Bank*, 191 App. Div. 19; 232 N. Y. 581). We leave the question open whether custom may write into " scrip " or other abbreviated forms of contract (as into the " binder " of insurance) the terms and incidents of the definitive instruments to be delivered in exchange. If limits are to be set, even in such conditions, to the range of implication, there is no occasion to define them now. By hypothesis, the obligations of both instruments, informal and definitive alike, however loosely expressed, are in reality the same.

We are dealing in the case at hand with instruments of a different order. The certificates and warrants put out upon the market by the defendants are not the temporary or provisional bonds of the government of Belgium. Temporary or provisional bonds had already been issued, and were already in the bankers' hands. The certifi-

cates and warrants are not the obligations of the government of Belgium at all. They are the obligations of the defendants personally. The Belgian government does not undertake by these certificates to deliver bonds to the subscribers. The defendants, the bankers, undertake to deliver bonds "when, as and if delivered" by the Belgian government to them. The Belgian government does not undertake by the warrant annexed to the certificates to pay interest thereon at the next due date or thereafter. The defendants undertake that payment of interest will be made by them, "but only after the receipt by the undersigned from the Kingdom of Belgium of moneys" adequate therefor. The documents are not informal equivalents for the definitive documents that are to take their place thereafter. They are the executory contract of bankers who have already underwritten an issue of securities, binding them to make delivery and payment when they get the documents and the money.

We do not say that authority was lacking to issue certificates in some other form that would have imposed a different obligation. Very likely the bankers might have put forth participation certificates or trust receipts whereby the temporary or provisional bonds would have been charged with a trust or subjected to an equitable assignment for the benefit of subscribers. There would be a question even then whether such instruments, if issued, would have had the effect of a negotiation of a part interest in the bonds. The statute provides that negotiation may be effected only by delivery or by indorsement (Neg. Inst. Law, § 60), and that indorsement to be effective must be an indorsement of the entire instrument, and not merely a transfer or attempted transfer of a part interest therein (§ 62). There is no occasion to determine the application of those sections, for the instruments issued were not participation receipts giving a present equitable interest in the existing temporary bonds. They were executory promises. The underwriters of the

issue, holding the temporary or provisional bonds as security for the underwriting, became bound to the subscribers for the delivery of definitive bonds " when, as and if " received from the government of Belgium.

We do not mean to suggest that if the definitive bonds had been wrongfully withheld or had never been prepared, the subscribers would have been unable to establish an equitable interest in the temporary or provisional bonds already delivered to the bankers. A court of equity would decree such an interest if it was a fair inference from all the circumstances that effect would thus be given to the intention of the parties. As bearing upon that intention, there would be significance in a circular issued by the bankers to announce the coming issue. In that circular, we find the statement: " Trust receipts will be delivered pending the preparation of the definitive bonds." From the aggregate of circumstances, the inference might be drawn that a trust was to attach to something until the definitive bonds were issued, though whether to the subscription moneys or to the provisional bonds, which were not mentioned in the circular at all, it would be difficult to know. The important thing for present purposes is that the equitable interest, if any, would have its origin, not in any contract expressed in the certificate itself, but in facts *dehors* the certificate which might lead equity to hold that justice would be defeated unless a trust should be implied.

This analysis of the contract impels us to the conclusion that the law denies negotiability to instruments so phrased. Negotiable instruments may fall within one or other of two classes. They may represent interests in property, in which event they will give rise to rights *in rem*, or they may be promissory and executory, creating rights *in personam*. Negotiability was once determined by the rules of the law merchant. In this State, a statute, the Negotiable Instruments Law, has codified those rules either wholly or in part. We assume, though there is no

occasion to determine, that negotiable instruments of the first class, *i. e.,* those representing interests in property, are not within the purview of the statute, however broad its title. Other acts, more restricted in scope, deal with bills of lading, warehouse receipts, and certificates of stock, instruments quasi-negotiable, if not negotiable altogether. Our concern at the moment is with instruments of the second class, where the words, in effect at least, are those of promise merely. We do not now decide that even as to instruments of this order, the creative force of the law merchant has been extinguished altogether. Opportunities for growth may exist along lines and in directions which can hardly be charted in advance. We are satisfied, however, that the law merchant is without capacity to make instruments negotiable against the express prohibition of a statute which says that they are not negotiable.

The Negotiable Instruments Law of New York is much broader than its English model. The English act is expressly limited to bills of exchange, checks and promissory notes. It does not cover bonds or other classes of securities (Chalmers, Bills of Exchange, p. 362). The argument has been made that bonds are excluded from our statute also. The provisions of section 332, directed as they are to bonds, municipal and corporate, leave no support for that position. The statute of New York does not confine itself, moreover, to an enumeration of certain qualities which, if found, will make instruments negotiable. It enumerates others which will make them non-negotiable. By section 20, " an instrument to be negotiable must conform to the following requirements." Of the five requirements that follow, we quote the second and the third. It " must contain an unconditional promise or order to pay a sum certain in money." It " must be payable on demand, or at a fixed or determinable future time." By section 23, " an instrument payable upon a contingency is not negotiable, and the happening of the

event does not cure the defect," and by section 24 there is a like declaration as to the non-negotiable character of any " instrument which contains an order or promise to do any act in addition to the payment of money," with enumerated exceptions not important for the case at hand.

These are the tests to which the instrument in suit must be subjected.   It is promissory in all its features, yet its promises are of a two-fold order.   There is a promise for the payment of money, subject to specified conditions, and welded into this there is another promise, again subject to conditions, for the delivery of bonds. So far as the instrument is one for the payment of money, it is open to the objection that it is payable not absolutely nor at a fixed or determinable time, but subject to a contingency.   The holder is to receive interest on presentation of the annexed warrant, subject, however, to the condition that moneys for such payment have been supplied by the government of Belgium.   So far as the instrument is one for the delivery of bonds, it is open to the same objection, and to the additional one that it is a promise to make payment not " in money," but in something else (§§ 20, 24; *Hosstatter* v. *Wilson*, 36 Barb. 307; *Brown* v. *Richardson*, 20 N. Y. 472; *Hodges* v. *Shuler*, 22 N. Y. 114; *Dinsmore* v. *Duncan*, 57 N. Y. 573, 580). The statute says that instruments are " not negotiable " when they embody such provisions.

The law merchant cannot prevail against prohibitions so specific.   In holding otherwise, we should do more than supplement the statute.   We should disregard and contradict it.   The plaintiff's case is not helped by section 7 to the effect that " in any case not provided for in this chapter the rules of the law merchant shall govern." The difficulty is that the case *is* provided for.   Unforeseen situations may reveal gaps in the statutory rules.   In such circumstances the law merchant is competent to

4

fill them. It is without power to annul what the statute has ordained.

We do not mean to cast doubt through anything here written upon the capacity of merchants to create new forms of negotiability by contract or by estoppel. One may suppose a certificate whereby any and all holders forego and renounce their equities in favor of later holders for value and without notice. We do not pass upon the effect of provisions, however phrased, that aim at that result. A right conferred by statute will not be lost to the holder of an instrument at the conflicting behest of a rival, but inferior, body of law, *e. g.*, the law merchant (5 Holdsworth, History of English Law, 144; Aigler, Recognition of New Types of Negotiable Instruments, 24 Col. L. R. 563, 564). The conclusion does not follow that it may not be qualified or extinguished by the provisions of a contract (see, however, *Am. Nat. Bank* v. *Sommerville*, 191 Cal. 364; and *cf.* 33 Yale L. J. 302).

Such a contract cannot be found, however, in a provision without more that a certificate, non-negotiable in form, shall be payable to bearer (*Railroad Co.* v. *Howard*, 7 Wall. 392, 415). It cannot even be found in the provision that the bankers " may treat the bearer * * * as the absolute owner * * * for all purposes," and " shall not be affected by any notice to the contrary." The object of that provision was obviously the protection of the bankers rather than the change or enlargement of the title of the holder. The bankers are not to be liable if they yield to the demand of the holder though they have notice of the adverse claim. This does not mean that they shall be under a duty to yield if they find it prudent to resist. There is no equivalence between a provision so phrased and one that stamps upon an instrument the quality of negotiability by consent renewed expressly or impliedly with each successive act of transfer. Equities are cut off upon a transfer of negotiable paper in favor of holders for value and in good faith. The

provision in this certificate, if it were extended from the bankers to the holders, would give protection and title to purchasers *with* notice. Nothing of the sort was meant.

Just as instruments not otherwise negotiable may (for anything now decided) become negotiable by contract, it is also true, of course, that they may become so by estoppel (*Union Trust Co.* v. *Oliver*, 214 N. Y. 517). The plaintiff does not contend that any element of estoppel is discoverable here. The owner of these certificates did not intrust them to the possession of the thief. He did not even negligently leave them where they would be likely to be stolen (*Hudson Trust Co.* v. *Am. Linseed Co.*, 232 N. Y. 350; *People's Trust Co.* v. *Smith*, 215 N. Y. 488). He kept them in a safe from which they were abstracted by a burglar. We find nothing in the situation that would enlarge the plaintiff's rights beyond the measure of the statute.

The conclusion thus reached finds support in judgments in other jurisdictions (*Crocker Nat. Bank* v. *Byrne*, 178 Cal. 329, 334; *Bowie* v. *Nat. City Bank*, 122 Wash. 269; *Hearne* v. *Gillette*, 151 La. 79; *King Cattle Co.* v. *Joseph*, 158 Minn. 481; *International Finance Co.* v. *Northwestern Drug Co.*, 282 Fed. Rep. 920), though we would not be understood as approving everything there said or even everything there decided. If the English cases go farther than our own, the difference may be explained by the restricted scope of their codifying statute. A word as to some of them may be helpful. *Bechuanaland Co.* v. *London Trading Co.* (1898, 2 Q. B. 658) involved a transfer of bonds, payable subject to conditions, but negotiable by custom. There was no contention that the statute governing bills and notes applied to such securities. *Edelstein* v. *Schuler & Co.* (1902, 2 K. B. 144) did not differ in essentials from *Bechuanaland Co.* v. *London Trading Co.* On the other hand, *Rumball* v. *Met. Bank* (L. R. 2 Q. B. D. 194) went so far as to hold that scrip

calling for future delivery of certificates of stock, was negotiable, if so treated in the market, though in England, as with us, in the absence of statute, the certificates of stock themselves would be only quasi-negotiable when ultimately issued (*Knox* v. *Eden Musee Co.*, 148 N. Y. 441; *Union Trust Co.* v. *Oliver, supra; Colonial Bk.* v. *Cady*, 15 A. C. 267; Chalmers, Bills of Exchange, p. 376). *Webb, Hale & Co.* v. *Alexandria Water Co.* (21 T. L. R. 572, 573) followed *Rumball* v. *Met. Bank* in deference to its authority, ALVERSTONE, L. C. J., doubting whether in the absence of authority the rule of *Goodwin* v. *Robarts* should be extended so as to make the provisional securities negotiable when the final ones were not. We think there is no case, even in the English courts, in which the law merchant with its customs has effectively contravened the prohibition of a statute (*cf.* Byles on Bills, chap. XIX).

We do not underrate the importance of permitting business to originate for itself the methods and instrumentalities that may be found by experience to be helpful to its free development (Aigler, Recognition of New Types of Negotiable Instruments, 24 Col. L. Rev. 563; Holdsworth, Origins and Early History of Negotiable Instruments, 32 L. Q. R. 20, 36). There is force in the argument that wider freedom of choice through the spontaneous flowerings of custom would work a social gain. One of the debit items to be charged against codifying statutes is the possibility of interference with evolutionary growth. It is the ancient conflict between flexibility and certainty. So far as the Negotiable Instruments Law is concerned, the remedy for the evil, if it be one, is an amendment of the statute that will add to the negotiable instruments there enumerated or described such other classes as the law merchant or the custom of the market may from time to time establish. Until such an amendment shall be adopted, the courts in their decisions must take for granted that the Legislature is content with the law as it is written.

We have assumed in the foregoing discussion that a custom to deal with the certificates as negotiable was adequately proved. The fact is that the assumption is unsupported by the record. The trial judge did not find the existence of the custom, though such a finding was requested. The evidence is too vague and general to make the refusal error, even if custom were material. All that we have is the testimony of a banker, one of the defendants, that temporary certificates, issued by governments and corporations in advance of a final issue of bonds, pass freely from hand to hand according to the practice of financial houses. This tells us nothing unless the certificates are described. There are many temporary certificates that are merely provisional bonds. As to this particular form of certificate, the testimony is that it was not adopted till 1920, simultaneously, it would seem, with the issue of the certificates in controversy. The time might be found to be too short for custom to develop. " A custom relied upon to take the place of a settled principle of law, and therefore to have the force of law, ought to be as definite and specific in negativing the principle as the law which it assumes to supplant is in affirming it " (*Fed. Reserve Bank* v. *Malloy*, 264 U. S. 160, 171).

The judgment should be affirmed with costs.

HISCOCK, Ch. J., POUND, McLAUGHLIN, ANDREWS and LEHMAN, JJ., concur; CRANE, J., not sitting.

Judgment affirmed.