William H. Reynolds, Respondent, v. Title Guarantee and Trust Company, Appellant.

Bonds — trustees — obligation of trustees to bondholders — right of assignee of registered owner of bonds to compel transfer on books of trustee — issue of duplicate bonds in place of those claimed to have been lost or destroyed and certification thereof by trustee — presentation of old bonds by assignee for transfer — transfer and registration thereof in name of new owner proper — subsequent payment to new owner of pro rata of moneys received from sale of corporate property — president of corporation who purchased the duplicate bonds with full knowledge that they were substitutes for the originals may not recover from trustee the amount of his loss.

1. A person who accepts an attempted transfer of title without delivery of a bond takes only such title as the original registered holder may still have subject to the risk that the bond may eventually turn up in the hands of a third party who, at least as between himself and the original holder, has acquired full ownership.

2. Bonds secured by mortgage or deed of trust issued to a trustee constitute no original contractual obligation on the part of the trustee to pay any moneys to the bondholder. They are the obligations of the issuing corporation and any liability on the part of the trustee must be predicated upon a finding of dereliction while acting as such trustee or upon a finding that by placing its certificate upon duplicate bonds it asserted their validity and by such assertion induced the purchase of such bonds.

3. Though corporate bonds payable to the " registered holder " and by their terms transferable by the holder only upon the books of the trustee may not be negotiable instruments in a strict sense, undoubtedly they are intended to pass easily from purchaser to purchaser and by proper indorsement ownership as between seller and purchaser can be transferred. When the lawful registered holder delivers bonds properly indorsed to a broker and executes an irrevocable power of attorney for their transfer on the books of the trustee, the broker acquires a right to the bonds which he can protect by compelling a transfer on the books of the trustee. This right is not lost by the subsequent issue of duplicate bonds and the transfer of such duplicate bonds on the corporate books to another registered holder.

17

4. Where, therefore, defendant, a trustee named in a mortgage or deed of trust executed by a corporation to secure an issue of its bonds, upon the affidavit of the owner of certain of said bonds that they were lost and had not been negotiated and upon receiving an indemnity bond running to the corporation and to itself as trustee, certified duplicate bonds issued by the corporation and signed by the plaintiff as its president, which bonds were marked " duplicate " and bore on the back of the cover the words: " This Bond is issued in place and stead of the original bonds of the same number said to have been lost or destroyed," whereupon plaintiff, the president of the corporation, purchased the bonds from the owner and secured their transfer upon the books of the trustee to himself, but thereafter it appeared that the original bonds had not been lost but had been assigned by the owner to a broker as collateral security and afterwards bought by said broker, and defendant upon presentation to it of the original bonds for transfer entered the transfer thereof upon its books, registered them in the name of the broker and thereafter paid to said broker his *pro rata* of moneys received from a sale of the corporate property, the plaintiff cannot successfully maintain an action against defendant to recover as holder of the duplicate bonds.

5. A contention that an assurance or guaranty by defendant that the duplicate bonds were valid and enforcible obligations should be implied from the very fact that the defendant placed its certificate upon them for the purpose of giving them circulation and required and received an indemnity bond to protect it against damages and that the plaintiff relied upon this fact as well as upon the language of the certificate, cannot be upheld. The certificate that " the within is one of the Bonds described in the mortgage therein mentioned " must be read in connection with the further certificate, the bond " was issued in place and stead of the original bond of the same number said to have been lost or destroyed." The plaintiff as president of the corporation issuing the duplicate bonds knew that the corporation received no new consideration and had no right or intention to assume a new obligation independent of the obligation assumed when the original bond was issued and was not deceived as to the existence of any fact by the certificate placed upon the duplicate bonds nor by the fact that they were placed in circulation.

*Reynolds* v. *Title Guarantee & Trust Co.*, 208 App. Div. 556, reversed.

(Argued April 7, 1925; decided May 12, 1925.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the second judicial department,

entered April 16, 1924, affirming a judgment in favor of plaintiff entered upon a verdict directed by the court.

*Lynn C. Norris* and *Edward M. Perry* for appellant. Reynolds' assignment of the bonds in question from Powell was subject to the equities existing in favor of a prior purchaser thereof, even though such prior purchaser and assignee had given no notice of his assignment to the trustee or debtor, and even though Reynolds purchased in good faith, without any knowledge or notice of such prior assignment. (*Green* v. *Warnick*, 64 N. Y. 220; *Owen* v. *Evans*, 134 N. Y. 514; *Schafer* v. *Reilly*, 50 N. Y. 61; *Central Trust Co.* v. *West India Imp. Co.*, 169 N. Y. 314; *Scheurer* v. *Brown*, 67 App. Div. 567; *Fortunato* v. *Patten*, 147 N. Y. 277.) The issuance of duplicate certificates or bonds by Dreamland after the original certificates had been said to have been lost did not create a new indebtedness of Dreamland. They were in effect substitutes which should prevail in the absence of the originals. (Story on Promissory Notes [7th ed.], § 448, note 5; *Miller* v. *Rutland, etc., R. Co.*, 40 Vt. 399; *New Orleans, etc., R. Co.* v. *Miss. College*, 47 Miss. 560; *Lawrence* v. *Lawrence*, 42 N. H. 109.) The certificate " that the within is one of the bonds described in the mortgage therein mentioned " merely means that the within is a duplicate and that it is entitled to such protection under the mortgage as a duplicate of an original bond is entitled to. (*Tschetinian* v. *City Trust Co.*, 97 App. Div. 380; 186 N. Y. 432; *Ainsa* v. *Mercantile Trust Co.*, 174 Cal. 504; *Bauernschmidt* v. *Maryland Trust Co.*, 89 Md. 507; *McCauley* v. *Ridgewood Trust Co.*, 81 N. J. L. 86; *Fidelity Trust Co.* v. *Wash.-Or. Corp.*, 217 Fed. Rep. 588; *Crane* v. *Fidelity Trust Co.*, 238 Fed. Rep. 693; 244 U. S. 658.) If the certificates are construed as a warranty that the bonds were entitled to the benefits afforded by the trust mortgage, they were not authorized by that mortgage. The defendant cannot be held liable

upon them either as trustee or in its general corporate identity. (*Hollister* v. *Stewart*, 111 N. Y. 644; *C. & S. Ry. Co.* v. *Blair*, 214 N. Y. 497; *Gause* v. *Comm. Trust Co.*, 196 N. Y. 134; *Davidge* v. *Guardian Trust Co.*, 203 N. Y. 337; *Harms Co.* v. *Mitchel Brewing Co.*, 228 N. Y. 263.)

*Alvin C. Cass* for respondent. The defendant trust company's certificate was a warranty that the duplicate bond on which it was indorsed was entitled to the benefits of the mortgage. (*Tschetinian* v. *City Trust Co.*, 186 N. Y. 432; *Holbrook* v. *N. J. Zinc Co.*, 57 N. Y. 616; *Davidge* v. *Guardian Trust Co.*, 203 N. Y. 337.) Defendant is estopped from impugning its own certificates. (*Holbrook* v. *N. J. Zinc Co.*, 57 N. Y. 621; *Holland Trust Co.* v. *Thompson-Houston Co.*, 170 N. Y. 68; *Jarvis* v. *M. B. Co.*, 148 N. Y. 652; *Bank of Batavia* v. *N. Y., L. E. & W. R. R. Co.*, 106 N. Y. 199; *King* v. *Briarwood Land Co.*, 131 N. Y. Supp. 946.) Plaintiff alone has good title to the Dreamland indebtedness represented by bonds 1227 to 1232. (*Clarkson Home* v. *M., K. & T. R. R. Co.*, 182 N. Y. 47; *Zander* v. *N. Y. S. & T. Co.*, 178 N. Y. 212.)

Lehman, J. The defendant is the trustee named in a mortgage or deed of trust executed in 1904 by a corporation " Dreamland " to secure an issue of $750,000 " mortgage and income bonds " to become due on January 1, 1914. The bonds were registered bonds and under their terms were transferable by the holder thereof " only in person, or by attorney duly authorized, upon the books of the trustee." Each bond contained a term that " This bond shall not be valid or obligatory until it has been duly authenticated by the certificate of the Title Guarantee and Trust Company as such Trustee endorsed hereon." The trustee's certificate which was indorsed on each bond provided: " The undersigned

hereby certifies that the within is one of the Bonds described in the mortgage therein mentioned."

In March, 1915, six $500 bonds were registered upon the defendant's books in the name of Llewellyn L. Powell. At that time the plaintiff who was the president of " Dreamland " telephoned to the defendant's trust officer that he wanted to buy Powell's bonds; " that Powell had lost them and what could be done." The defendant's trust officer informed the plaintiff that " if Powell would make an affidavit showing the bonds had not been negotiated, would give a bond of indemnity running to the Dreamland Company and the Title Company as trustee; and Dreamland would duplicate the bonds, the trustee would certify them." The plaintiff procured an affidavit from Powell and an indemnity bond as suggested. Dreamland issued duplicate bonds which were signed by the plaintiff as president. The defendant certified the bonds and the plaintiff purchased them from Powell and secured their transfer upon the trustee's books to himself. The bonds themselves were marked " duplicate " and bore on the back of the cover the words: " This Bond is issued in place and stead of the original bond of the same number said to have been lost or destroyed. Dated New York City, March 31st, 1915. Title Guarantee & Trust Company as Trustee."

After the " duplicate " bonds were transferred to the plaintiff on the books of the trustee, the original bonds were presented to the defendant for transfer. It appears that Powell had not lost them but had assigned them to a broker as collateral security. His affidavit upon the faith of which the " duplicate " bonds were issued was false and fraudulent. The defendant then entered the transfer of the original bonds on its books and registered them in the name of the broker. It was stipulated at the trial that thereafter the broker " became the absolute owner of said six original bonds by the purchase thereof upon an auction sale " held after Powell had failed to

pay the loan to the broker for which they were security. In 1920 the defendant as trustee received moneys derived from sale of the property of Dreamland covered by its corporate mortgage. The bondholders consented that this money should be distributed to them *pro rata.* The holder of the original bonds demanded his *pro rata* share and brought suit against this defendant to enforce this demand. The plaintiff successfully opposed a motion made by the defendant to interplead the plaintiff in that suit. The defendant thereupon paid the holder of the original bonds the *pro rata* share payable thereon and the plaintiff has brought this action as holder of the duplicate bonds.

The bonds constitute no original contractual obligation on the part of the defendant to pay any moneys to the bondholder. They are the obligations of Dreamland and any liability on the part of the defendant must be predicated upon a finding of dereliction while acting as trustee or upon a finding that by placing its certificate upon the duplicate bonds it asserted their validity and by such assertion induced the plaintiff to purchase the bonds. Upon neither theory does the evidence sustain a judgment against it.

Though a corporate bond payable to the " registered holder " and by its terms transferable by the holder only upon the books of the trustee may not be a negotiable instrument in a strict sense (Daniel on Negotiable Instruments [6th ed.], section 1501b; *Scollans* v. *Rollins,* 173 Mass. 275), yet as this court said of certificates of stock in *N. Y. & N. H. R. R. Co.* v. *Schuyler* (34 N. Y. 30, 82): " It was never intended to lock up those instruments in the hands of the stockholders named in them — but to give to them every practicable facility as the basis of commercial transactions." Undoubtedly they were intended to pass easily from purchaser to purchaser and by proper indorsement, ownership as between seller and purchaser could be transferred. When the lawful registered holder delivered

these bonds properly indorsed to the broker and executed an irrevocable power of attorney for their transfer on the books of the trustee, the broker acquired a right to the bonds which he could protect by compelling a transfer on the books of the trustee.

This right was not, in our opinion, lost by the subsequent issue of the duplicate bonds and the transfer of such duplicate bonds on the corporate books to another registered holder. After the original registered holder had pledged the bonds with the broker he certainly had no right to transfer them to another and a subsequent attempted transfer would not give the assignee the right to demand from the broker possession of the bonds. The bond itself embodied the corporate obligation and, aside from any general rule that ordinarily delivery of a bond must accompany transfer of title (*Lewis* v. *Mason's Administrator*, 84 Va. 731), it is clear from its form that the corporation issuing it intended that, at least, the equitable title and the right to compel registry should be transferable through delivery of the bond when the blanks upon it were properly filled out. It can hardly be questioned that any person who accepts an attempted transfer of title without delivery of a bond takes only such title as the original registered holder may still have and subject to the risk that the bond may eventually turn up in the hands of a third party who at least as between himself and the original holder has acquired full ownership. The mortgagor and the trustee have in effect contracted that transfer of the bonds may be completed by registry when the bond is presented, accompanied by a properly executed power of attorney. Through that agreement the bonds become more easily salable and there is good consideration for the contract. (*N. Y. & N. H. R. R. Co.* v. *Schuyler, supra.*) If the mortgagor or trustee may destroy the right of the owner of the original bonds to compel registry of the transfer by a previous transfer on its books even though made in good

faith but without production of the bonds, the bonds lose that valuable element of facility of circulation created by their form; for a purchaser could not in that event accept delivery of bonds with safety unless he first inquired whether the bonds, even though outstanding, had not been transferred on the corporate books. Though the defendant relied on the affidavit of Powell that the bonds of which he was the registered holder were lost or destroyed, it must have known that if that affidavit were in fact false and the holder had actually parted with the bonds, any act which deprived the new owner of his rights, be they legal or equitable, complete or incomplete, to the bonds would be a wrong to him. The defendant's contract that the bonds which constituted the *indicia* of the debt, might pass from hand to hand upon execution of the blank forms provided thereon and that the transfer might thereafter be completed by registry, is not subject to any limitations express or implied that they must be presented for transfer before duplicate bonds had been issued and a transfer thereof registered. The broker to whom the original bonds were delivered by the registered holder had a right to assume that no duplicate bonds would be issued so long as the original bonds were outstanding. We do not need to decide what would be the effect upon the rights of the parties if this plaintiff had purchased the duplicate bonds without knowledge that they were issued as duplicate bonds. The plaintiff, taking the bonds with the same knowledge that the defendant had, that the affidavit might be false, could acquire from the defendant's acts no rights which would debar or excuse the defendant from carrying out its obligation to transfer the original bonds on the corporate books. The plaintiff's title was subject to such equities as he knew might be outstanding. It follows that when the broker presented the original bonds for delivery, the defendant could be compelled to accede to the demand and when the registered holder of these original bonds demanded

the *pro rata* share of the moneys which the defendant held as trustee for distribution among the bondholders, the defendant was bound to pay him this share. As trustee the defendant received no moneys for payment to the holder of the duplicate bonds. Any right of action which the plaintiff may have must be based upon the defendant's act in signing the certificate upon the duplicate bonds or in registering their transfer to the plaintiff and not upon the failure of the defendant to pay to the plaintiff a *pro rata* share in the moneys received by the defendant as trustee for distribution among the bondholders.

That certificate was signed and the transfer made at the request of the plaintiff or the corporation of which the plaintiff was president. The certificate that " the within is one of the Bonds described in the mortgage therein mentioned " must be read in connection with the further certificate the bond " was issued in place and stead of the original bond of the same number said to have been lost or destroyed." Doubtless the plaintiff would not have paid Powell for the duplicate bonds if no such certificate had been issued. Through the making of that certificate he obtained assurance, at least, that the defendant, as trustee, would recognize him as the successor in title to any rights which Powell still retained in the bonds and that such rights as he obtained from Powell were placed in easily transferable form. In other words, the bonds show on their face that they were duplicate; that they were issued in place and stead of other bonds said to have been lost or destroyed; that the original bonds were covered by the mortgage described in the bonds; that the defendant would recognize Powell's transfer of his rights to the duplicate bonds and that plaintiff could by similar transfer dispose of the rights he received from Powell. Now it appears that Powell's rights were subject to superior equities or title and the question remains whether the defendant gave assurance against the exist-

ence of such equities. There is nothing in the certificate signed by the defendant which upon a reasonable construction can be regarded as untrue. The bonds as stated were " duplicates " issued in place and stead of others " said to be lost or destroyed." Because they were duplicates and the original bonds were in fact not lost or destroyed the defendant as trustee has received no moneys applicable to their payment and has been compelled to register the transfer to another of the original bonds. Nowhere in the certificate is there any express assurance or guaranty that the original bonds will not be found in the hands of one who has a right to enforce them or that the " duplicate " bonds possess any validity other than a duplicate of the valid original might have and that they are enforcible other than as alternatives for the original. Any expression of opinion on the part of the defendant's trust officer that they were valid, enforcible obligations would of course not give rise to any cause of action against the defendant.

It is urged, however, that such assurance or guaranty should be implied from the very fact that the defendant placed its certificate upon the duplicate bond for the purpose of giving the bond circulation and that the plaintiff relied upon this fact as well as upon the language of the certificate and that the defendant required and received an indemnity bond to protect it against damages that might accrue to it by reason of its act. Doubtless, the defendant's certificate was placed upon the duplicate bonds to facilitate their transfer but facility of transfer of even a duplicate bond which would be valid only if the original was actually destroyed would have its advantages for a prospective purchaser. Possibly because of such facility of transfer an unwary purchaser might be led to accept such bonds without realizing that the original bonds might be outstanding; possibly it was negligence on the part of the defendant to put in circulation a bond through which the unwary might be trapped. We are

not dealing with the rights of one who by reliance on the fact that the duplicate bonds were given circulation by the mortgagor and the trustee was lured into a sense of security which kept him from examining the bonds to determine his rights thereunder. We are determining the rights acquired under the express terms of the instrument by one who knew all the circumstances which led up to the placing of the duplicate bonds in circulation and who in fact joined in placing them in circulation.

The plaintiff as president of the corporation issuing the duplicate bonds knew that the corporation received no new consideration and had no right or intention to assume a new obligation independent of the obligation assumed when the original bond was issued. In reliance upon the affidavit of the registered holder of the bond the mortgagor issued the duplicate bond signed by the plaintiff as president and the defendant signed the certificate and as a result facility of circulation was accorded to the duplicate bonds. The exaction of a surety bond to protect the corporations issuing and certifying the bonds was in any view of the transaction a prudent act for the duplicate bonds might be paid before the original bonds turned up. The plaintiff knowing that the bonds were issued only in place of the original bonds and not as independent obligations; knowing that the duplicate bonds were placed in circulation in reliance upon an affidavit that they were lost or destroyed, joined in giving circulation to the duplicates by signing the bond as president of the corporation issuing it. He was not deceived as to the existence of any fact by the certificate placed upon the bond nor by the fact that it was placed in circulation. He and perhaps the defendant may have acted under a mistake of law as to the effect of the issue of duplicate bonds or he, like the defendant, may have been deceived by the affidavit upon which the defendant acted. He was not deceived by the certificate placed upon the bonds for not only is the certificate true but

the plaintiff knew the facts which led up to the signing of the certificate.

The judgments should be reversed and the complaint dismissed, with costs in all courts.

HISCOCK, Ch. J., CARDOZO and POUND, JJ., concur; MCLAUGHLIN, CRANE and ANDREWS, JJ., dissent.

Judgments reversed, etc.