LOUIS F. ROTHSCHILD and Others, Plaintiffs, *v.* THE FIRST NATIONAL BANK OF BINGHAMTON, NEW YORK, Defendant.

Supreme Court, New York County, June, 1931.

*Olvany, Signer & Donnelly* [*James F. Donnelly* and *Samuel Michelman* of counsel], for the plaintiffs.

*Hinman, Howard & Kattell* [*Isaac H. Levy, Roger P. Clark* and *George Gordon Battle* of counsel], for the defendant.

COTILLO, J. This action is one brought in equity praying that the defendant be required to surrender and deliver to plaintiffs as owners thereof certain interim certificates for the bonds of the Buffalo General Electric Company, which the plaintiffs allege were stolen from them on or about February 5, 1926, and which had come into the possession of the defendant. The plaintiffs also pray that the defendant be restrained and enjoined pending a final decree in this action from demanding from the persons by whom the said interim certificates were signed the permanent certificates of the Buffalo General Electric Company referred to in the interim certificates, and enforcing or attempting to enforce any rights founded upon the bank's possession of the said interim certificates and from assigning, transferring or attempting to assign or transfer and from delivering or parting with the said interim certificates now held by the defendant, and also that the defendant be restrained from prosecuting any suit against the agents of the banking firm for the recovery of damages for the refusal by the said agents to deliver the permanent certificates to the bank. This action was first started with Rothschild & Company as the sole plaintiffs, but by permission of the court a supplemental summons was issued adding the National Surety Company as a coplaintiff. The purpose of adding the surety company as coplaintiff was that the National Surety Company, having issued a general bond to the plaintiffs, securing them from loss of the character involved in this action, paid to the plaintiffs the amount of the loss suffered because of the alleged theft of the bonds.

In the month of February, 1926, L. F. Rothschild & Company were the owners of $50,000 worth of interim certificates of the Buffalo General Electric Company which interim certificates were in the following form:

" No. M 000    INTERIM CERTIFICATE    $1000 Bond
" for
" BUFFALO GENERAL ELECTRIC COMPANY
" General and Refunding Mortgage Gold Bonds Series A, 5%.
" General and Refunding Mortgage Gold Bonds Series A,
" Dated February 1, 1926    Due February 1, 1956
" Office of
" LEE, HIGGINSON & COMPANY
" Boston, New York or Chicago
" THIS IS TO CERTIFY that the bearer hereof is entitled to receive
.....................ONE THOUSAND DOLLARS.................
face value BUFFALO GENERAL ELECTRIC COMPANY General and
Refunding Mortgage Gold Bonds Series A, 5%, dated February 1,
1926, and due February 1, 1956, with coupons due August 1, 1926,
and subsequently attached, to be delivered when, as and if issued
and received by the undersigned and upon surrender of this Certifi-
cate.    The undersigned may treat the bearer as the absolute owner
hereof for all purposes, and shall not be affected by any notice
to the contrary.
        " LEE, HIGGINSON & CO.
        " BLAIR & CO., INC.
        " SCHOELLEOPF, HUTTON & POMEROY, INC.
        " BY
" BOSTON, *February* 2, 1926.
" The Bond to which the bearer will be entitled as aforesaid
will not be delivered except upon the surrender of this Certificate."

The plaintiffs became the owners of these certificates by virtue
of a purchase and sale between themselves and Theodore Prince &
Company on January 25, 1926.    At about two o'clock on February
5, 1926, a runner from Prince & Company came to the office of
L. F. Rothschild & Company to deliver $40,000 of the said certifi-
cates and handed them through the cashier's window at Rothschild
& Company and received a receipt for them.    After the delivery
of the certificates by the runner, L. F. Rothschild & Company,
who were entitled to twenty-four hours' notice before the delivery
of the certificates, called Prince & Company up and asked them
to come and get the certificates as they did not have time to get
the certified check out for payment.    Thereafter someone came
to the cashier's window of the plaintiffs and asked for the check
of Theodore Prince & Company; the plaintiffs' cashier opened the
window; asked how much the account was and when the runner
called off the exact amount due on the bill, the cashier told him
that the certificates were to go back to Prince & Company, and

handed the certificates to the runner. This runner was never seen again. Within ten or fifteen minutes after the delivery to the unknown runner, a second runner appeared from Prince & Company for the certificates. He was told that the certificates had already been delivered.

Immediately upon the discovery of the theft the plaintiffs gave notice of the loss of the certificates to the New York Stock Exchange, the Curb Exchange, the Dow-Jones Ticker Service and by publication in the New York *Times* and the New York *Herald-Tribune*. The New York Stock Exchange caused to be published on the ticker a notice advising the [loss of the certificates, giving the numbers on the certificates. Later the plaintiffs learned that twenty-four of the certificates had been pledged for a loan by one Cronemeyer with the defendant. Thereafter, the defendant, having possession of twenty-four of the certificates, brought suit against Lee, Higginson & Company in the State of Massachusetts for the conversion of those certificates, claiming that the bank had made a demand for definitive bonds and that Lee, Higginson & Company had refused to deliver these bonds. Cronemeyer, who pledged the bonds as collateral for the loan to the defendant, had been introduced for the first time to the defendant by a director of the bank. He had no account at the bank and even at the time that the loan was made opened no account. Defendant claims that it acted in good faith because Cronemeyer was known generally in the community as a man who owned some real estate and the cashier felt no inquiry was necessary to learn anything further about him, although it was the only transaction Cronemeyer had ever had with the bank. The cashier of the bank testified that he read both the New York *Times* and the New York *Herald-Tribune*, the papers in which notice of the loss had been inserted. The bank presented its certificates to Lee, Higginson & Company for the purpose of obtaining definitive bonds some time in October, 1926, about six months after the loan had been made by it, and at that time was told that the certificates had been stolen. Cronemeyer was indicted for larceny in the first degree.

After the theft had been established the National Surety Company, one of the plaintiffs in this action, which had a general blanket bond guaranteeing the plaintiff Rothschild & Company against such a loss, paid to Rothschild & Company the amount of loss which it had sustained, together with the accrued interest, whereupon Rothschild & Company executed an assignment of its cause of action herein to the National Surety Company. Pursuant to the terms of the blanket bond, the National Surety Company is entitled to the return of the securities, being subrogated to the rights of

Rothschild & Company with reference to any recovery in this action.

The defendant in its answer and in its conduct of the trial has attempted to prove, *first*, that it lawfully came into the possession of the certificates; *second*, that the plaintiffs duly intrusted the certificates mentioned to their agents to make delivery of the same with the intent and purpose by such delivery of divesting the plaintiffs of all right, title and interest which they had in the certificates and that if the certificates were stolen or wrongfully diverted, such theft or wrongful act was accomplished by the plaintiffs' agent, and that as between the plaintiffs and the defendant, the plaintiffs are chargeable with such act and the consequence thereof; *third*, that the plaintiffs are estopped from maintaining this action because of their negligence; *fourth*, that the certificates are negotiable certificates and delivery vests title in the person to whom they are delivered.

In addition to those defenses the defendant has also raised the question as to whether plaintiff Rothschild & Company are the proper party plaintiff in view of the fact that any loss occurring has fallen upon the shoulders of the National Surety Company and that Rothschild & Company, having been reimbursed, has assigned its claim to National Surety Company.

The plaintiffs rest their claim in this action upon the decision of *Manhattan Company* v. *Morgan* (242 N. Y. 38), while the defendant rests its case on the decision of *National Safe Deposit Co.* v. *Hibbs* (229 U. S. 391).

At the time they were issued the interim certificates belonged to the class of non-negotiable instruments, although subsequently, by the provisions of sections 261 and 262 of the Personal Property Law (added by Laws of 1926, chap. 704; since amd. by Laws of 1930, chap. 630), they were placed in the category of negotiable instruments. The proof is insufficient to establish the existence of a custom to deal with the certificates as negotiable. Therefore, unless defendant can establish an element of estoppel against plaintiffs and show that it is the less innocent of the two parties upon whom the loss should fall, there must be judgment in favor of the plaintiffs.

In *Manhattan Co.* v. *Morgan* (*supra*) the facts were quite similar, except that the situation of the parties was reversed, plaintiff there being in the position of the present defendant. In affirming judgment in favor of defendants the court took occasion to make certain observations on the element of estoppel, which if applicable to the present situation, would render the title of the instant defendant superior to that of the plaintiffs. Said the court: " Just as

instruments not otherwise negotiable may (for anything now decided) become negotiable by contract, it is also true, of course, that they may become so by estoppel. (*Union Trust Co.* v. *Oliver*, 214 N. Y. 517.) The plaintiff does not contend that any element of estoppel is discoverable here. The owner of these certificates did not intrust them to the possession of the thief. He did not even negligently leave them where they would be likely to be stolen. (*Hudson Trust Co.* v. *Am. Linseed Co.*, 232 N. Y. 350; *People's Trust Co.* v. *Smith*, 215 N. Y. 488.) He kept them in a safe from which they were abstracted by a burglar. We find nothing in the situation that would enlarge the plaintiff's rights beyond the measure of the statute."

While defendant does not seriously challenge plaintiffs' contention that the certificates did not become negotiable by contract, it strenuously urges that elements of estoppel exist against the plaintiffs, which, within the language of the *Morgan* case, would bar them from relief. Its contention is that the plaintiffs voluntarily intrusted the documents to a thief, and that this act set in motion a chain of circumstances which led to the action of the defendant in good faith advancing money on them. The difficulty with defendant's argument is that it assumes that plaintiffs voluntarily intrusted the securities to a thief. The fact is that the messenger in this case, by false pretenses, obtained possession of the securities. The very moment they came into his custody he was guilty of larceny. No further transfer on the messenger's part was necessary to render him guilty of that crime. In that respect the situation was different from the case relied upon by defendant (*National Safe Deposit Company* v. *Hibbs*, 229 U. S. 591). There, Myers, a dishonest employee of the plaintiff, charged among other duties with the redelivery to customers of securities pledged by them for loans made by the bank, requested an official of the latter to deliver to him certain securities for return to a pledgor. Instead of using them for that purpose, he took them out of the bank and caused them to be sold by brokers. The court visited the loss upon the thief's employer, the plaintiff in the action, as against a third party to whom the securities had come in due course. The distinguishing element there is that the securities were not intrusted to a thief in the first instance. When the certificates were handed to Myers he became their legal custodian. No matter what his intentions were, he could not, while the securities were in his possession, be held for larceny. The *locus penitentiæ* was still open to him. It was only when he transferred them to a third party that he may be said to have embezzled them. If, in the case at bar, the plaintiffs had taken a man on the street and volun-

tarily intrusted him with the interim certificates, the stranger would thus have become their employee, and a situation parallel to that in the last cited case would have arisen. Possibly the plaintiffs were imprudent, but so was the defendant in going into a large transaction with one with whom they had previously had no dealings. But in any event the loss cannot be visited upon the plaintiffs because of the dishonesty of their employee, because as a matter of fact the thief was not their agent or selected by them for the specific purpose of performing an errand in connection with the securities.

Judgment will, therefore, be directed in favor of the plaintiff National Surety Company for the relief demanded, as the assignee by subrogation of the original plaintiffs. Submit findings and judgment on notice.