### FIRST NAT. BANK OF BINGHAMTON, N. Y., v. MAYOR AND CITY COUNCIL OF BALTIMORE.
#### No. 4562.

Circuit Court of Appeals, Fourth Circuit.
Jan. 9, 1940.

Before PARKER and SOPER, Circuit Judges, and DOBIE, District Judge.

Edgar Allan Poe, Sr., of Baltimore, Md. (George L. Hinman, of Binghamton, N. Y., on the brief), for appellant.

Roszel C. Thomsen and Walter L. Clark, both of Baltimore, Md. (Charles C. G. Evans, City Sol., Allen A. Davis, Asst. City Sol., and Edwin W. Lowe, all of Baltimore, Md., on the brief), for appellee.

SOPER, Circuit Judge.

The First National Bank of Binghamton, New York, brought this suit to recover from the Mayor and City Council of Baltimore, a municipal corporation, the face value of two certificates, with interest, in each of which it was certified that the corporation was indebted to L. F. Rothschild and Company in the sum of $5,000 due and payable on May 1, 1933 upon the surrender of the certificate, with interest thereon until due at 4 per cent per annum. The certificates had been issued on October 6, 1925 in pursuance of a city ordinance which authorized the issuance of the registered stock (so called) of the corporation. On the back of each certificate was printed a form of assignment, which had been signed in blank by Rothschild and Company. On the face was the recital that it was transferable only at the office of the City Register in Baltimore in person or by attorney. The certificates had come into the hands of the bank in due course of business as security for a loan.

The defense to the suit was based on facts, found by the District Judge on sufficient evidence, which showed that the certificates had been stolen or misappropriated from the lawful owner, and that the city had caused duplicates to be issued, which were duly paid on maturity. Originally the certificates were issued to Rothschild and Company, stockbrokers in New York City, on October 6, 1925; were endorsed in blank by Rothschild and Company and sold and delivered by them to Redmond and Company, also stockbrokers in New York, prior to December 17, 1925; and were sold and delivered back to Rothschild and Company in the same form on the last mentioned date. On the same day they disappeared and some question arose between the brokers as to whether the redelivery had actually taken place, but the District Judge found that it did take place, and the evidence supports the finding.

The City Register of Baltimore City was notified that the certificates had been lost or stolen, and on May 17, 1926, new certificates payable to Rothschild and Company were issued, after the making of an affidavit, the publishing of an advertisement and the delivery of an indemnity bond, as provided in city ordinances. Thereafter the new certificates were transferred on the books of the city to other holders, and semi-annual interest was paid as it fell due until May 1, 1933 when the principal sums of the indebtedness were also paid to the holders.

In the meantime, on February 8, 1926, one Cronemeyer, a business man and property owner in Binghamton, borrowed $8,000 from the plaintiff bank and gave the two certificates as collateral. On May 24, 1926 he borrowed an additional $20,000. He gave his note for $28,000 to the bank, merging the new loan with the old, and gave as additional collateral certain nonnegotiable interim certificates for $24,000 of bonds of the Buffalo General Electric Company. The note was not paid when due, and the collateral proved to be unsaleable when it was charged that both sets of securities had been stolen. The interim certificates also had been in the possession of Rothschild and Company and by mistake had been delivered by them to an outsider and the circumstances justified the inference that he had stolen them. When they turned up in the hands of the plaintiff bank, Rothschild and Company brought suit against the bank and succeeded in recovering them. See, Rothschild & Co. v. First Natl. Bank of Binghamton, 140 Misc. 499, 251 N.Y.S. 25, affirmed without opinion in 237 App.Div. 808, 260 N.Y.S. 975, and in 262 N.Y. 559, 188 N.E. 63. The evidence did not show how Cronemeyer secured possession of the securities, but it is significant that both the certificates and the bonds came into the hands of Cronemeyer and were pledged by him to the bank.

The city had no notice that the missing certificates had come to light until after

the new certificates had been issued to Rothschild and Company and had been transferred on the books of the city to other persons. This transfer took place on August 12, 1926. There was evidence that some time during that month, an attorney for the bank came to Baltimore and presented the original certificates to the City Register for transfer, but transfer was refused. The testimony was given twelve years after the event, and the absence of any written record left the date in such doubt that the judge reached the justifiable conclusion that the bank had failed to show that the city had notice of its claim until after the new certificates had been issued and transferred on its books. The bank took no further action until 1929, when it brought suit in a State court in Baltimore City for interest due up to that time. The suit was dismissed two years later for want of prosecution. Nothing further was done by the bank until the present suit was instituted on October 25, 1938. Upon all of these facts the District Judge, in a carefully considered opinion, decided that the bank was not entitled to recover. First Nat. Bank v. Mayor & City Council, D. C., 27 F.Supp. 444.

■ The bank claims, in the first place, that its title to the certificates was equivalent to that of a holder in due course of a negotiable instrument; and hence the nature of the certificates with respect to negotiability must first be determined. On this point we are in accord with the conclusion of the District Judge, who said (27 F.Supp. 450): "Whether tested by the negotiable instruments act or the prior law of merchants, it is clear on principle that the certificates are not negotiable. In form they constitute certificates of indebtedness to a named person and a promise to pay a definite sum of money on a definite date, with interest thereon payable semiannually on stated dates. They are not payable to the holder or his order, nor to him or bearer, nor even expressly to him and his assignees. The certificates also contain the legend that they are transferable only on the books of the City by the holder in person or by attorney. As the certificates are not made payable 'to order or to bearer', and contain no similar or equivalent words indicating an intention to make them negotiable, they are not negotiable instruments (Md.Code, Art. 13, §§ 20, 29); Citizens' Nat. Bank v. Custis, 153 Md. 235, 244, 138 A. 261, 53 A.L.R. 1165.

In common with other choses in action for the payment of money they are assignable, but not negotiable. Interest payments are made by the City by check payable to the named holder. The certificates do not carry coupons for the interest payments. In legal nature and effect the so-called City stock is really a fully registered bond. Similar bonds, of an ordinary corporation, were held to be assignable but not negotiable * * * in Bank of United States v. Cuthbertson [4 Cir.], 67 F.2d 182, 187".

■ Since the certificates were not negotiable, the bank cannot recover upon the theory that it is a bona fide holder for value without notice of any infirmity in the title of Cronemeyer, from whom it received the certificates. But the bank also claims that it acquired a title to the certificates superior to that of Rothschild and Company under the doctrine of estoppel, as outlined in such cases as National Safe Deposit S. & T. Co. v. Hibbs, 229 U.S. 391, 33 S.Ct. 818, 57 L.Ed. 1241; First National Bank v. Lanier, 11 Wall. 369, 20 L.Ed. 172; Scollans v. Rollins, 179 Mass. 346, 60 N.E. 983, 88 Am.St.Rep. 386, and Russell v. Bell Tel. Co., 180 Mass. 467, 62 N.E. 751. The rule of these cases is that when an owner of such property as stock certificates entrusts them to an agent and clothes him with such indicia of ownership that a bona fide purchaser would be justified in believing that the agent is authorized to sell, the true owner is estopped from denying the title of the purchaser, although the agent has in fact acted corruptly and without the owner's authority.

■ The pending case must be decided according to the applicable State law, Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487; and as the transfer of the certificates to the bank took place in New York, the law of that State governs under the rule announced in the Maryland decisions. Mylander v. Page, 162 Md. 255, 265, 159 A. 770. The New York law of estoppel in kindred cases conforms to the rule outlined above. Knox v. Eden Musee Americain, 148 N.Y. 441, 42 N.E. 988, 31 L.R.A. 779, 51 Am.St.Rep. 700; Union Trust Co. v. Oliver, 214 N.Y. 517, 108 N.E. 809; People's Trust Co. v. Smith, 215 N.Y. 488, 109 N.E. 561, L.R.A.1916B, 840, Ann.Cas. 1917A, 560; Reynolds v. Title Guarantee & Trust Co., 240 N.Y. 257, 148 N.E. 514; Manhattan Co. v. Morgan, 242 N.Y. 38, 150 N.E. 594; Van Schaick v. National City

Bank, 245 App.Div. 525, 283 N.Y.S. 372, affirmed, 271 N.Y. 570, 3 N.E.2d 189. There is some doubt whether the rule is applicable in New York to non-negotiable instruments endorsed in blank and not covered by the Uniform Stock Transfer Act, as is pointed out in the opinion of the District Judge, 27 F.Supp. 444 at page 452–454. But even if it be assumed that the rule is applicable to the kind of instruments that are in suit, a holder of the securities does not acquire a title superior to that of the true owner unless it appears that the owner has entrusted them with the indicia of ownership to an agent from whom directly or indirectly the holder has acquired them in good faith. This situation does not exist in the pending case. There is no evidence of entrusting on the part of Rothschild and Company. On the contrary, it is stipulated as part of the facts of the case that nobody with authority to authorize the sale, transfer or delivery of the securities on behalf of Rothschild and Company ever authorized the sale, transfer or delivery of the certificates at any time to any person except the original sale and delivery to Redmond and Company; and the reasonable inference from all the facts found by the District Judge is that the certificates were stolen or otherwise misappropriated by a wrong doer from Rothschild and Company without their knowledge.

The bank relies particularly upon the decision in Van Schaick v. National City Bank, 245 App.Div. 525, 283 N.Y.S. 372, 375; Id., 271 N.Y. 570, 3 N.E.2d 189. But the facts in that case are clearly distinguishable. A firm of stockbrokers turned over to a messenger a certificate of stock endorsed in blank by the registered owner, with instructions to make a delivery, and the messenger wrongfully delivered the certificate to an unknown third person who had no right to hold it. The certificate was later purchased in good faith by a third person and at his request was transferred to him on the books of the corporation. The court held that the stockbrokers had no redress because "by voluntarily turning over the certificate with full external indicia of title to their employee for delivery, the brokers made possible the loss which they sustained". Obviously this feature is lacking in the pending case. The mere fact that the certificates were delivered by Redmond and Company into the custody of some employee of Rothschild and Com-

pany does not supply the element of entrusting upon which the estoppel against the owner depends. Knox v. Eden Musee Americain, 148 N.Y. 441, 458, 42 N.E. 988, 31 L.R.A. 779, 51 Am.St.Rep. 700; Scollans v. Rollins, 179 Mass. 346, 60 N.E. 983, 88 Am.St.Rep. 386. The present controversy resembles rather the companion case of Rothschild & Company v. First Nat. Bank, 140 Misc. 499, 251 N.Y.S. 25, in which the brokers recovered in the New York courts the interim certificates which were pledged to the bank with the certificates here in suit. It was held that the element of estoppel against Rothschild and Company did not exist because they did not voluntarily entrust the documents to the thief and clothe him with the indicia of ownership, and therefore the loss could not be visited upon them.

Since the bank has failed to show that it has a title superior to that of Rothschild and Company, its suit must fail, and it is not necessary to consider the further point discussed below that in any event the bank could not recover because, under the circumstances of the case, the city had a superior equity in its favor against Rothschild and Company at the time that it first received notice of the bank's claim.

Affirmed.