AUGUSTUS P. LORING, JR., & another, executors, *vs.*
L. CUSHING GOODHUE, administrator, & others.

Suffolk. November 18, 1926. — May 20, 1927.

Present: RUGG, C.J., BRALEY, CROSBY, & SANDERSON, JJ.

*Equity Jurisdiction,* To relieve from results of fraud, Estoppel. *Estoppel.*
*Fraud. Bona Fide Purchaser.*

An executor of a will, who owned thirty shares of a real estate trust represented by a single certificate, in arranging for a sale of the shares with a leading specialist in the sale of such securities, with whom he had dealt extensively for a number of years and whose reputation was excellent, signed the certificate and a blank power of attorney for the transfer and delivered them with necessary accompanying probate certificates to the specialist so that the single certificate could be split into smaller units, because each share had a par value of $1,000 and thirty shares was a large block to sell to any one purchaser. The specialist presented the certificate and papers to the transfer agent of the trust and caused six certificates to be issued, standing in his own name, and then pledged the shares thus represented for his own debts to pledgees who did not know of the title of the executor. *Held,* that the executor was estopped to claim any title or interest in the shares so pledged superior to that of the pledgee, a pledgee or purchaser in such circumstances not being required to look beyond the certificate presented to him to make search respecting the validity of former assignments or to ascertain the chain of title.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on September 16, 1925, against the administrator of the estate of George Burroughs, State Street Trust Company, and Old Colony Trust Company, seeking delivery to the plaintiff of certificates representing ten shares of Boston Real Estate Trust.

The suit was referred to a master and was heard upon the master's report by *Pierce,* J. Material facts found by the master are stated in the opinion. The single justice ordered an interlocutory decree confirming the master's report and a final decree dismissing the bill. The plaintiffs appealed.

*J. Noble,* for the plaintiffs.

*N. Leonard,* for Old Colony Trust Company.

*E. K. Arnold,* for State Street Trust Company.

Rugg, C.J.  This is a suit whereby the plaintiffs seek to recover ten shares in the Boston Real Estate Trust wrongfully pledged by one Burroughs.  The case was referred to a master.  His report has been confirmed and a final decree entered dismissing the bill.  No evidence is reported.  The facts found by the master must be accepted as true.  *Goldband* v. *Commissioner of Banks*, 245 Mass. 143, 146.

The plaintiffs, in June, 1925, decided to sell thirty shares in the Boston Real Estate Trust represented by a single certificate standing in the name of a testatrix of whose will they were executors.  This trust was an unincorporated association managed by trustees, the beneficial interest in which was represented by transferable shares.  The plaintiffs arranged for the sale with one Burroughs, the leading specialist in this class of securities, with whom the plaintiffs had dealt extensively for a number of years, whose reputation was excellent and who was trusted by all the parties. A price was fixed for which it was thought the shares could be sold, but the representative of Burroughs suggested that it probably would be necessary to split the single certificate into smaller units, because each share had a par of $1,000 and thirty shares was a large block to sell to any one purchaser.  This suggestion was accepted in behalf of the plaintiffs.  Thereafter the certificate for thirty shares was delivered to the representative of Burroughs, accompanied by a blank power of attorney executed by the plaintiffs.  To save time in effecting a transfer after sale, the plaintiffs also provided the necessary probate papers showing the authority of the plaintiffs to sell the shares.  It was intended that the shares represented by the single certificate should be split into such blocks as Burroughs should sell, and all necessary papers were furnished to that end.  Immediately on receipt of the certificate with accompanying papers, Burroughs presented them to the transfer agents and received in return six certificates each for five shares in his own name.  Of this transfer the plaintiffs had no knowledge.  Burroughs immediately thereafter indorsed in blank each of these six new certificates and for value pledged three of them with the Old Colony Trust Company and three with the State Street

Trust Company. A few days later Burroughs notified the plaintiffs that he had sold twenty of the shares and sent to them his check in payment therefor at the price fixed. Shortly thereafter Burroughs died without having given notice of the sale to the trust companies or making delivery to the purchaser, and without finding a purchaser for the remaining ten shares. Each of the trust companies still holds the fifteen shares as originally pledged, and neither holds any other such shares pledged to it by Burroughs. The master's report concludes in these words: "When the plaintiffs delivered the thirty share lot to Burroughs with the blank power of attorney and the probate papers, as already described, they did it to enable Burroughs to split the lot into convenient blocks and to speed up transfers after sale. It is clear that the plaintiffs trusted Burroughs and had no reason to expect any such breach of trust as was committed. They of course gave him no authority to pledge the stock for his own benefit but it is perfectly clear that they did intentionally give Burroughs the opportunity and all the documentary aids to commit this very breach of faith. The transfer agents had no choice but to split the stock as Burroughs demanded and the banks no reason to suspect that the new certificates were not his own."

The single question to be determined is, whether the plaintiffs are entitled to prevail on these facts. The precise point is, which of innocent persons must suffer for the wrongdoing of another. Burroughs obtained from the plaintiffs possession of the certificate for thirty shares with all the indicia of title and instrumentalities for complete transfer of title with the express understanding that the certificate should be divided into smaller ones for purposes of sale. If it was the convenient way of facilitating the sales and completing the transactions, it doubtless would have been within the scope of the authority conferred to take the new certificates in the name of Burroughs. But, however that may be, the plaintiffs entrusted Burroughs with the power to demand such new certificates in his own name, and the transfer agents had no alternative save to comply with the demand of Burroughs for such new certificates. When he had secured the

new certificates in his own name, he had something ready to sell in the ordinary course of such business without putting the purchaser on his guard. He could make such sale and transfer full title without showing evidence of the custom of the trade, as was required in *Scollans* v. *Rollins,* 179 Mass. 346, where there was simply an indorsement of the certificate in blank by the person appearing on its face to be the owner. In the case at bar, one important further step was taken than was taken in *Scollans* v. *Rollins,* because Burroughs had certificates standing in his own name as owner so that, as vendor, he had every appearance of being the genuine owner with consequent full right to sell. By the acts of the plaintiffs Burroughs had been put in possession of the original certificate of shares with all the evidences of ownership. He was enabled thereby to obtain the new certificates in his own name. Thus he was clothed with sufficient evidence of complete ownership according to the tests applied by business men to ascertain knowledge on that subject before making a purchase of such property. A pledgee or purchaser in such circumstances is not required to look beyond the certificate presented to him, to make search respecting the validity of former assignments or to ascertain the chain of title. *Salisbury Mills* v. *Townsend,* 109 Mass. 115, 121, 122. Upon these facts we think that "the principles which underlie equitable estoppel place the loss upon him whose misplaced confidence has made the wrong possible." *National Safe Deposit, Savings & Trust Co.* v. *Hibbs,* 229 U. S. 391, 397. *Russell* v. *American Bell Telephone Co.* 180 Mass. 467. *Tower* v. *Stanley,* 220 Mass. 429. *White* v. *Duggan,* 140 Mass. 18. *Long* v. *Lowrey,* 243 Mass. 414, 418. *Baker* v. *Davie,* 211 Mass. 429, 436. The case at bar is distinguishable from cases like *O'Herron* v. *Gray,* 168 Mass. 573, and *Barstow* v. *City Trust Co.* 216 Mass. 330, 334.

*Interlocutory and final decrees
affirmed with costs.*