ARNAULT B. EDGERLY vs. THE FIRST NATIONAL BANK OF
BOSTON & others.

Suffolk.   May 21, 1935. — September 21, 1935.

Present: RUGG, C.J., PIERCE, FIELD, LUMMUS, & QUA, JJ.

*Corporation*, Transfer of stock.  *Uniform Stock Transfer Act.  Pledge.
Agency*, What constitutes.  *Contract*, Construction.  *Words*, "Here-
after."

A signed paper containing an assignment of and power to transfer cor-
porate stock, with not only the name of the transferee but also the
description of the stock and the number of shares left blank, was not a
sufficient "separate document" within G. L. (Ter. Ed.) c. 155, § 27 (b);
and unless one who purported to pledge an unindorsed stock certificate
standing in the name of the signer of such paper had actual authority
from the stockholder to make the paper apply to that certificate and
the shares represented thereby, there was no valid transfer to the
pledgee.

Although a "permission to pledge" "the following securities belonging
to me," but not listing any securities, would not have conferred upon
the holder of the "permission" apparent authority to pledge any
particular securities of the person who signed it, a further provision
therein that the holder was authorized to pledge "Also any securities
of mine . . . which" the holder "may . . . deposit with" the pledgee
as collateral security did confer such apparent authority upon the
holder, and also incidental authority to insert a description of any
stock of the signer in a "separate document" for the transfer of stock
given by him with the "permission," with the space for such descrip-
tion left blank.

In a "permission to pledge" certain securities, "Also any securities of
mine . . . which" the holder of the "permission" "may hereafter
deposit with" the pledgee as collateral security, the word "hereafter"
did not mean subsequent to an initial pledge of the specified securities
but subsequent to the signing of the "permission."

BILL IN EQUITY, filed in the Superior Court on Novem-
ber 24, 1934.

The final decree was entered by order of *Greenhalge*, J.

*E. K. Arnold,* for the plaintiff.

*F. W. Eaton,* for the defendants.

LUMMUS, J.   The plaintiff deposited for safe keeping with
an investment banker named Crowell, among other stock

certificates, an unindorsed certificate in the name of the plaintiff for five thousand three hundred ninety-seven shares of class A stock of The Moxie Company, a Massachusetts corporation. Some months later, Crowell advised the plaintiff to replace a loan from State Street Trust Company of $20,000, secured by one thousand shares of stock of Massachusetts Investors Trust, by a loan of the same amount which Crowell undertook to obtain from the defendant The First National Bank of Boston upon his own note, secured by other stock that was to be bought with the proceeds of the sale of the stock of Massachusetts Investors Trust. "Crowell further stated that in order to put the transaction through he would need stock powers and a permission to pledge signed by the plaintiff. He suggested that several stock powers would be advisable in order that the Massachusetts Investors stock might be split for sale."

Accordingly, the plaintiff signed five or six forms of transfer of stock with power to transfer the stock on the books of the corporation, the name of the transferee, the name of the stock and the number of shares being left blank, and delivered them to Crowell. The plaintiff further signed and delivered to Crowell a "permission to pledge," addressed to The First National Bank of Boston, authorizing a person whose name was left blank, who was described as "the Borrower" and who was intended to be Crowell, to pledge "the following securities belonging to me," the space for the listing of such securities being left blank, "Also any securities of mine/ours or of which I/we am/are the holder of record, which the Borrower may hereafter deposit with you for the purposes aforesaid," as collateral security for whatever the "Borrower" might borrow.

Armed with these papers, Crowell borrowed on his own note from the defendant The First National Bank of Boston, at first $20,000, later increased to $35,000, and as collateral security pledged the certificate for five thousand three hundred ninety-seven shares of Moxie stock. The officers of the bank filled in the description of the stock in both the forms just described, and the name of Crowell as "Borrower" in the "permission to pledge." At that time,

Crowell was of good standing and reputation, and the defendant The First National Bank of Boston took the pledge in good faith, without notice of any facts making the transfer wrongful.

In December, 1932, more than a year after the pledge, Crowell was petitioned into bankruptcy and committed suicide. The plaintiff, who had supposed that the replacement of his loan of $20,000 was secured by a pledge of stocks bought with the proceeds of the sale of stock of Massachusetts Investors Trust, discovered that the defendant bank was holding his Moxie stock as collateral security for Crowell's borrowings. The plaintiff brought this bill to restrain any sale of the Moxie stock and to compel the redelivery of the certificate to the plaintiff. The facts were found by a master, whose report was confirmed, and a final decree was entered dismissing the bill with costs. The plaintiff appealed.

Apart from statute, a certificate of stock is not the embodiment of the shares represented by it. *Kennedy* v. *Hodges*, 215 Mass. 112. See also *Kling* v. *McTarnahan*, 277 Mass. 386. Neither the certificate nor the shares can be said to be fully negotiable, in the sense in which money or a negotiable instrument before maturity is negotiable. The owner of a certificate of stock, like the owner of an ordinary chattel, does not lose title when someone steals it and sells it to an innocent purchaser. *Pratt* v. *Higginson*, 230 Mass. 256. That remains true at common law although the certificate when stolen bears an indorsement in blank signed by the owner. *Scollans* v. *E. H. Rollins & Sons*, 179 Mass. 346, 352, 354. *Russell* v. *American Bell Telephone Co.* 180 Mass. 467, 469. *Barstow* v. *City Trust Co.* 216 Mass. 330. *Casto* v. *Wrenn*, 255 Mass. 72, 75. *National City Bank of Chicago* v. *Wagner*, 216 Fed. Rep. 473. The only way in which the owner can lose title at common law to an innocent purchaser from a wrongdoer having no title, is by estoppel. An owner, entrusting to another a certificate of stock bearing the owner's indorsement in blank, knows that he is making actual deceit possible. When a business custom exists by which such a

certificate is accepted without inquiry into the title of the possessor unless special cause for suspicion exists — and such a custom has been proved in a number of cases — a purchaser or pledgee taking such a certificate without special reason to doubt the title is not put upon inquiry by the existence of a blank for the name of the transferee. *Scollans* v. *E. H. Rollins & Sons,* 173 Mass. 275, 279, 280. For this purpose, it is immaterial whether the owner knew of the custom or not. The owner, entrusting the certificate indorsed in blank to one who wrongfully sells or pledges it to another who takes it in reliance upon such a custom, is estopped to deny the title of that other. *Scollans* v. *E. H. Rollins & Sons,* 173 Mass. 275; *S. C.* 179 Mass. 346. *Russell* v. *American Bell Telephone Co.* 180 Mass. 467. *Clews* v. *Friedman,* 182 Mass. 555, 558. *Baker* v. *Davie,* 211 Mass. 429. *Loring* v. *Goodhue,* 259 Mass. 495. In certain reported cases some element of estoppel has been lacking. *Barstow* v. *City Trust Co.* 216 Mass. 330. *Marcotte* v. *Massachusetts Security Corp.* 250 Mass. 246. *Casto* v. *Wrenn,* 255 Mass. 72. There is no finding in this case that any custom existed of accepting documents purporting to be transfers of stock with the name of the stock left blank.

The uniform stock transfer act (G. L. [Ter. Ed.] c. 155, §§ 24–44) now governs the transfer of title in Massachusetts to shares in corporations of Massachusetts and other States having laws consistent with it. *Casto* v. *Wrenn,* 255 Mass. 72, 75. *Turnbull* v. *Longacre Bank,* 249 N. Y. 159, 165. The purpose of that act is to make stock certificates and the shares represented by them more nearly negotiable than they formerly were. *Warr* v. *Collector of Taxes of Taunton,* 234 Mass. 279, 281, 282. *Turnbull* v. *Longacre Bank,* 249 N. Y. 159, 164, 165. *Peckinpaugh* v. *H. W. Noble & Co.* 238 Mich. 464. *Jackson* v. *Peerless Portland Cement Co.* 238 Mich. 476. *Connolly* v. *Peoples State Bank,* 260 Mich. 352. By § 27 (b) a certificate and the shares represented thereby may be transferred "by delivery of the certificate and a separate document containing a written assignment of the certificate or a power of attorney to sell, assign or transfer the same or the shares represented thereby, signed

by the person appearing by the certificate to be the owner of the shares represented thereby"; and this may be made out to a specified person or the name of the person may be left blank. By § 31 "the delivery of a certificate to transfer title in accordance with section twenty-seven shall be effectual," with an immaterial exception, "though made by one having no right of possession and having no authority from the owner of the certificate or from the person purporting to transfer the title." Under the corresponding section of the uniform stock transfer act it has been held in other States that even a thief may give a good title by delivery of a stolen certificate bearing an indorsement in blank. *Turnbull* v. *Longacre Bank*, 249 N. Y. 159. *Commercial National Bank* v. *National Surety Co.* 259 N. Y. 181. *Peckinpaugh* v. *H. W. Noble & Co.* 238 Mich. 464. *Jackson* v. *Peerless Portland Cement Co.* 238 Mich. 476. We say that the exception in § 31 is immaterial, because by § 33 (1) it does not apply where "the certificate has been transferred to a purchaser for value in good faith without notice of any facts making the transfer wrongful." By § 26 a pledgee is a "purchaser," a taking of security even for an antecedent debt is a taking for value, and a thing is done in good faith if done honestly though done negligently. *Ironside* v. *Levi*, 278 Mass. 18, 22, 23. *Ripley* v. *J. Murray Walker & Co. Inc.* 286 Mass. 264.

Nevertheless, if we confine our attention to the delivery of the stock certificate to the defendant bank, accompanied by the "separate document" signed by the plaintiff, purporting to assign unnamed stock to an unnamed person, and ignore the "permission to pledge," no valid transfer to the defendant bank is shown. Section 27 of the uniform stock transfer act purports to state the "only" methods by which legal title may be transferred. *Place* v. *Chaffee*, 251 Mass. 508, 510. *Good Fellows Associates, Inc.* v. *Silverman*, 283 Mass. 173, 180. *Stuart* v. *Sargent*, 283 Mass. 536, 542. Where, as in this case, the signature of the owner is on a "separate document," that document must purport to assign, or authorize the transfer of, the "certificate" or "the shares represented thereby." When the defendant

bank first saw that document, it contained no reference to the certificate in question nor to Moxie shares. Apart from the "permission to pledge," the defendant bank, in taking that certificate and those shares, placed its reliance, not upon any apparent transfer over the signature of the plaintiff, but rather upon the representation of Crowell that he was authorized to make the plaintiff's signature apply to that certificate and those shares. It is no part of the purpose of the act to protect one who takes an irregular document on the faith of oral representations. No matter how high in reputation Crowell stood, the bank acted at its peril in relying on his word, as distinguished from an apparent transfer by the plaintiff of the Moxie stock. *France v. Clark*, 26 Ch. D. 257, 262. *Colonial Bank* v. *Cady*, 15 App. Cas. 267. Compare *Fry* v. *Smellie*, [1912] 3 K. B. 282.

Much the same considerations apply to that part of the "permission to pledge" which contemplated the insertion of a list of securities but was delivered to the defendant bank without the insertion of the name of any security. If the "permission to pledge" had stopped there, the bank, in filling the blank with a description of the Moxie stock, would have been relying on Crowell's word rather than on anything signed by the plaintiff. The finding "that permission to pledge is frequently accepted by banks and brokerage houses in blank as to the name of the security pledged" is not a finding of a general custom that would justify the bank in assuming that the plaintiff's signature might be applied to any certificate that Crowell might present. Besides, the master finds that no custom existed of accepting a "permission to pledge" with the name of "the Borrower" left blank, as it was in this case.

But the "permission to pledge" signed by the plaintiff, in which the name of Crowell was rightfully inserted as "the Borrower" in accord with the understanding of the parties, went on to authorize "the Borrower" to pledge also, as security for loans to him, "any securities of mine/ours or of which I/we am/are the holder of record, which the Borrower may hereafter deposit with you." The word

"hereafter" does not mean subsequent to an initial pledge of named securities, but means subsequent to the signing of the "permission to pledge." There would be no point in limiting the initial pledge to named securities, and then giving an omnibus power to be exercised the next day or the next minute. The pledge of the Moxie certificate was made in strict accord with the apparent authority given Crowell, upon which the bank was expected to rely, to pledge "any securities" of the plaintiff which Crowell "may hereafter deposit." That apparent authority contained in the "permission to pledge" carried with it the incidental authority to fill in, upon the "separate document" of transfer of stock, the name of any stock included within the apparent authority to pledge. The bank was not affected by the true understanding between the plaintiff and Crowell, not communicated to the bank, by which the Moxie stock was to be held for safe keeping and not sold or pledged. *Brooks* v. *Shaw*, 197 Mass. 376, 380. *Globe Ticket Co.* v. *Boston Retail Grocers' Association*, 290 Mass. 235.

*Decree affirmed with costs.*