**NEW YORK LIFE INS. CO. v. BROWN.**

No. 4335.

Circuit Court of Appeals, Fourth Circuit.

Oct. 4, 1938.

Before PARKER and NORTHCOTT, Circuit Judges, and CHESNUT, District Judge.

Alva. M. Lumpkin, of Columbia, S. C. (Thomas, Lumpkin & Cain, of Columbia, S. C., on the brief), for appellant.

C. A. Mays, of Greenwood, S. C., and Butler B. Hare, of Saluda, S. C. (Robert Hayne Hare and Jeff D. Griffith, both of Saluda, S. C., and Mays & Featherstone, of Greenwood, S. C., on the brief), for appellee.

PARKER, Circuit Judge.

This is an appeal from a judgment for plaintiff in an action to recover damages for breach of contract with respect to three policies of life insurance issued by the New York Life Ins. Co. upon the life of one Robert N. Brown and payable to his estate. The policies had been assigned to a bank and the assignee had borrowed from the company their full loan value. When interest was not paid on the loans and no further premiums were paid, the company, acting under the provisions of the policies and the loan notes, granted extended term insurance; but insured died after this had expired. Action was instituted by his administratrix as plaintiff, alleging that the loan to the assignee was unauthorized and that the action of the company, in granting extended insurance for so short a period and in denying further liability under the policies, amounted to a breach of the contracts therein embodied. Actual damages in the sum of $17,000, the face of the policies, was demanded, with punitive damages in like amount. The bank to which the policies had been assigned had gone into receivership before action was instituted and all its assets, including the indebtedness due it by insured, had been assigned to one Wheeler, who was made a party defendant to the action but filed no pleading and asserted no rights under the policies. The jury found for plaintiff, awarding actual damages in the sum of $17,000 but no punitive damages. The only question which we need consider arises upon the motion of defendant for directed verdict, which, the court, with the consent of the parties, reserved for decision when submitting the case to the jury. Motion for judgment was made in connection with this motion after verdict was returned; but the motion was denied (D.C., 22 F.Supp. 82), judgment was entered for plaintiff upon the verdict, and defendant has appealed.

The facts bearing upon the motion for directed verdict are as follows: Two policies in the sum of $2,000 and $5,000 respectively were issued by defendant upon the life of Brown in July 1919 and were assigned by him to the bank of Saluda, of Saluda, South Carolina, in March 1922. A policy in the sum of $10,000 was issued by defendant on his life in October 1921 and was assigned by him in November of that year to the Farmers Bank of Saluda, S. C. The two assignee banks were later merged under the name of the Farmers Bank of Saluda. The form of assignment used in each case, and filed with the company under the provisions of the policy, was as follows:

"For value received ——— being of legal age, hereby assigns and transfer unto The Bank of Saluda, Saluda, South Carolina, the policy of insurance known as No. 6519915 of Robert N. Brown of Saluda, S. C., and all dividend, benefit and advantage to be had or derived therefrom, subject to the conditions of the said policy, and the rules and regulations of the Company and any indebtedness to the New York Life Insurance Company against said policy."

Following the assignments, all premiums on the policies were paid by the banks and were charged in some instances to the account of insured and in other instances to expense. The insured was indebted to the banks in an amount largely in excess of the face of the policies; and there is evidence to support the contention that the policies were assigned as collateral security to this indebtedness, but no evidence that the company had knowledge or notice of this fact. On the contrary, the evidence is that, upon a question arising as to whether it was necessary for the insured to sign dividend receipts, the company suggested in a letter that ordinarily policies were held by banks as collateral security, and that, if that were true here, it would be necessary for insured to join in a request for a change of option as to application of dividends, but that, if the policies were not assigned to the bank as collateral security, but represented an absolute purchase so that the title rested absolutely in the assignee, and if the assignee would so certify to the company, the company would then be able to deal with the assignee alone. Answering this letter, the cashier of the merged bank, which held all the policies, wrote a letter certifying that the policies were owned absolutely by the bank; and no reason appears why the company should

have doubted the statements therein contained.

The pertinent portions of the letter are as follows:

"All three of these policies now belong to and are held by The Farmers Bank of Saluda and under the assignments by the insured referred to above they became and were intended to become by the insured the property absolute of said banks, and under the consolidation are now the property absolute of The Farmers Bank of Saluda.

"We certify that these policies now represent an absolute purchase and that the title of these policies are now vested absolutely in The Farmers Bank of Saluda, the successor to The Bank of Saluda and The Farmers Bank—and that The Farmers Bank of Saluda is paying the premiums on said policies and that the insured now has no interest whatever in said policies or either of them.

"We hope that this plain statement may prove sufficient to satisfy the Home Office of The New York Life Insurance Company as to the title and ownership of these policies, and we ask that the Company now deal with us alone in regard to these policies in every respect and in every particular."

In 1931 the bank applied for and obtained from the company loans to the full extent of the loan value of the policies, receiving thereby a total of $3,393. This amount was credited by the bank on the indebtedness of insured; but there is no showing that the company had any knowledge that it was so credited. When the next premiums fell due they were not paid, nor was interest paid on the loans. The company, therefore, acting under provisions of the policies and of the loan agreements, proceeded to apply the reserve set up under the policies to the payment of the loans, granting extended term insurance for the balance of the reserve and notifying the bank accordingly. As above stated, this extended term insurance expired before the death of insured.

█ Under the circumstances set forth, we think that the company was justified in dealing with the bank alone in the making of the loans under the policies, and that the insured was estopped by the absolute assignments executed to the bank from questioning them. His administratrix, of course, stands in his shoes and is bound by the same estoppel. It is true, as held by the learned judge below, that an assignment absolute in form may be shown as between the parties to have been intended merely as collateral security; and, if notice that it was so intended can be brought home to one who deals with the assignee, he will be bound by the equities of the assignor. But no such notice is shown here, nor are facts disclosed sufficient to charge the company with notice that the assignments were not what they purport to be, i. e., absolute assignments of all assured's interest under the policies. The mere fact that the assignment was to a bank was not of itself sufficient to put the company upon inquiry as to equities of the assignor; and the company is not to be charged with notice from the mere fact that out of abundance of caution it made inquiry of the bank as to the nature of the assignment. There was nothing in the letter of the bank in response to the inquiry to put it on notice. That the assignments were absolute in form and on their face were sufficient to transfer to the bank all rights under the policies, does not admit of question. New York Life Ins. Co. v. Dunlevy, 9 Cir., 214 F. 1, 6; Thompson v. Equitable Life Assur. Society, 95 S.C. 16, 78 S.E. 439.

█ The case is not materially different from that presented in New York Life Ins. Co. v. Rees, 8 Cir., 19 F.2d 781, in which a bank, as pledgee of a life insurance policy under an assignment similar to that involved here, surrendered the policy for its cash surrender value. The contention was made that because the assignee held the policy in pledge as collateral security, the company should not have dealt with it as absolute owner and that the beneficiary under the policy was not bound by what had occurred. The court, speaking through the late Judge Walter H. Sanborn, pointed out that the determining factor was whether the company had notice or reasonable cause to believe that the transaction was a pledge, saying (at page 786): "But the defendant claimed and still claims that it never had any notice or reasonable cause to believe or suspect that the transaction was a pledge, and not the sale which the written contract evidences, until long after it had paid the surrender value of the policy to the bank, and received therefor the surrender of the policy and the assignment to the bank. If this claim of the defendant was well founded in fact, then there can be no doubt that the plaintiff was estopped from maintaining this action and recovering upon the policy." The court held also that it

was error not to give the jury the following instruction (at page 788): "That the defendant would not be bound, in view of the terms of this assignment by the state of affairs between Rees and the bank, with respect to the bank's right to surrender the policy, in the absence of some showing of notice to us that the bank held the policy as collateral security." Applying the law as thus stated to the case at bar, it is clear that the insured and those claiming under him were estopped from asserting rights under the policy, as there was no showing of notice to the company that the bank held the policy as collateral security; and verdict should have been directed for defendant accordingly.

■ The precise point here involved has not been decided by the Supreme Court of South Carolina. That court has, however, decided that an absolute assignment of a life insurance policy transfers all rights thereunder to the assignee. Thompson v. Equitable Life Assur. Society, supra; Antley v. New York Life Ins. Co., 139 S. C. 23, 137 S.E. 199, 60 A.L.R. 184. And this would clearly entitle the assignee under such absolute assignment to exercise the loan privileges granted by the policy. Whether an assignee holding the policy as collateral security for a debt may, upon default in payment thereof, surrender the policy for its cash value or secure a loan thereon, is a question which we are not called upon to decide. See, however, 37 C.J. 444 and cases there cited. The question here concerns dealings by the company, which had no notice of any equities of the insured, with one whom the insured had clothed with all the indicia of absolute ownership of the policies; and in such case the general rule is applicable, and we know of nothing in the law of South Carolina to the contrary, that one who clothes another with apparent ownership of choses in action, even though they be non-negotiable, is estopped from disputing such ownership as against one who deals with the apparent owner in reliance thereon. Cowdrey v. Vandenburgh, 101 U.S. 572, 575, 25 L.Ed. 923; McNeil v. Tenth National Bank, 46 N.Y. 325, 7 Am.Rep. 341; Chicago, etc., R. Co. v. Flanders, 8 Cir., 56 F.2d 114, 117; In re McIntyre & Co., 2 Cir., 181 F. 955, 958; Gidden Motor Co. v. Johnston, 155 Miss. 328, 124 So. 367; Powers v. Pacific Diesel Engine Co., 206 Cal. 334, 274 P. 512, 73 A. L.R. 1398, and note; Barnes v. Ganss, Mo. App., 72 S.W.2d 884; Loring v. Goodhue, 259 Mass. 495, 156 N.E. 704; 2 R.C.L. 632. There is nothing in Sec. 398 of the South Carolina Code which militates against this principle. The effect of that section is merely to provide that the assignee of a nonnegotiable chose in action shall take it subject to equities existing between the original parties. The section has reference to an action by the assignee (Westbury v. Simmons, 57 S.C. 467, 35 S.E. 764, 769), and has no possible effect upon the rights of those dealing in good faith with an assignee clothed with the indicia of absolute ownership.

■ But even if it be assumed that the company was charged with notice of the fact that the assignment was by way of collateral security for indebtedness due the bank, we think that the plaintiff would be in no better position under the peculiar circumstances of the case here presented. The bank as assignee was entitled to the proceeds of the policies to the extent of the indebtedness due it; and, as this indebtedness was clearly in excess of the face of the policies when the credit arising from the loan is disregarded, it is clear that the bank, or its assignee, was the one entitled to the entire amount due under the policies at the time of the death of insured, and that nothing was recoverable under the policies by his estate if the rights of the bank or its assignee were properly asserted. When suit was instituted on the policies in behalf of insured's estate and the assignee of the bank was made a party thereto, failure on his part to assert his rights was equivalent to assigning them to plaintiff; and plaintiff, as such assignee, must be held bound by any estoppel which would bind him. As he and the bank are clearly estopped from recovery on the policies by reason of the loan, plaintiff is estopped also. Any recovery by her would be of moneys properly due to the bank or its assignee, which she is allowed to recover only because the assignee has been made a party to the suit and has failed to assert his rights, thereby assigning them in effect to her. It was admitted by counsel at the bar of this court that some sort of agreement, the nature of which was not disclosed, was entered into between plaintiff and the assignee of the bank's assets prior to the institution of suit. Without assuming that this agreement contemplated a division of the recovery and fraudulent evasion of the estoppel binding the assignee, we do not think that an action can

be thus used to transfer the rights of one party to another so that the transferee will be free of an estoppel to which the transferor is subject.

It would be most amazing if the personal representative of an insured should be permitted to recover the full face of policies, as is attempted here, in an action begun fifteen years after the insured had ceased to pay premiums on them and had turned them over to a pledgee to secure an indebtedness exceeding their face amount, and after the pledgee, who had kept them alive for ten years by payment of premiums, had withdrawn by way of loan the reserve thereby created and allowed them to lapse. The plaintiff by the judgment below was allowed to recover the full amount of the policies, which, except for the item of interest, is as much as she could have recovered if they had never been pledged and the insured himself had paid the premiums on them up until the time of his death. Such a result manifestly cannot be sustained.

The judgment appealed from will be reversed and the cause will be remanded with direction to the court below to set aside the verdict and enter judgment for defendant as if verdict had been properly directed in its behalf. Baltimore & Carolina Line v. Redman, 295 U.S. 654, 55 S. Ct. 890, 79 L.Ed. 1636.

Reversed.

See, also, 99 F.2d 207.

Floyd Williams, of Cincinnati, Ohio, and Curtis B. Camp, of Chicago, Ill. (Curtis B. Camp, of Chicago, Ill., and John Weld Peck and John Colville Taylor, both of Cincinnati, Ohio, on the brief), for appellant.

Merrell E. Clark, of New York City (Merrell E. Clark, William R. Ballard, and M. R. McKenney, all of New York City, and Frost & Jacobs, of Cincinnati, Ohio, on the brief), for appellees.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.